NO. 12-07-00324-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


SUSANA REYES SOLANO,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Susana Reyes Solano appeals her conviction for injury to a child. In two issues, Appellant
argues that she was denied her right to a speedy trial and that the trial court should have granted her
motion to dismiss due to delay in bringing the indictment. We affirm.


Background

 Appellant was arrested on October 12, 2004 for injuring her child the previous month. She
bonded out the next day, and a Smith County grand jury indicted her for the felony offense of injury
to a child in July 2005. The trial was delayed because both sides filed motions for continuances and
because the trial court's calendar was congested due to a capital murder case. The trial court called
the case for trial in April 2006. The State filed a motion to continue that trial and a motion to
dismiss the indictment. With respect to the motion to dismiss, the State represented orally that it
needed to "talk to mainly one issue [sic]. The State may be able to pursue another indictment to add
[sic]. That is - - that was based on some of the information within the case file, so it would not be
limited to the act of the Defendant by maybe by her omission." The trial court did not rule on the
State's motion to continue, but granted the motion to dismiss. 

 In November 2006, another Smith County grand jury indicted Appellant for the same offense. 
A series of scheduling issues arose, and the matter was set for trial in August 2007. In July 2007,
Appellant filed a motion to dismiss alleging that the delays violated her constitutional rights. The
trial court held a hearing on July 27, 2007 and denied the motion before trial. The trial began on
August 6, 2007. The jury convicted Appellant as charged and assessed punishment at imprisonment
for fifteen years. This appeal followed.


Speedy Trial

 In her first issue, Appellant argues that the trial court should have dismissed the indictment
because her constitutional right to a speedy trial was violated.

Applicable Law

 The Sixth Amendment to the United States Constitution guarantees the accused the right to
a speedy trial. Cantu v. State, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing Barker v.
Wingo, 407 U.S. 514, 532, 92 S. Ct. 2182, 2193, 33 L. Ed. 2d 101 (1972)); see also Dickey v.
Florida, 398 U.S. 30, 37, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970). A claim of a violation of the right
to speedy trial is evaluated using a nonexclusive four part balancing test from Barker. See Shaw v.
State, 117 S.W.3d 883, 888-89 (Tex. Crim. App. 2003). The four Barker factors are the length of
the delay, the reason for the delay, the defendant's assertion of her speedy trial right, and the
prejudice to the defendant resulting from the delay. Id. 

 We review the factual components of a trial court's ruling on an appellant's federal
constitutional speedy trial claim for an abuse of discretion, and we review the legal components of
the ruling de novo. See Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). 
Application of the balancing test is a "purely legal question." See Cantu, 252 S.W.3d at 282. 

Analysis

 We begin by considering the length of the delay. See Cantu, 253 S.W.3d at 281. The parties
disagree on how to measure the length of the delay. Appellant asserts that the relevant measurement
is from the time of the original indictment to the trial, a period of about two years. Appellant cites
United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 474-75, 30 L. Ed. 2d 468 (1971), for the
proposition that the starting point for measuring the delay is the date of arrest or formal accusation,
but argues that the date of the first indictment is the appropriate starting point. 

 Citing Brown v. State, 163 S.W.3d 818 (Tex. App.-Dallas 2005, pet. ref'd), the State argues
that the starting point for measuring the delay is the date of the second indictment, that is November
2006, and that the delay is approximately eight months. The trial court did not state which period
it considered for its analysis. The general rule when a case is dismissed and a subsequent indictment
is obtained is to disregard, for speedy trial purposes, the time between the dismissal and reindictment
if the dismissal is in good faith. See United States v. MacDonald, 456 U.S. 1, 6-7, 102 S. Ct. 1497,
1501, 71 L. Ed. 2d 696 (1982); Deeb v. State, 815 S.W.2d 692, 705 (Tex. Crim. App. 1991); Griffith
v. State, 976 S.W.2d 686, 692 (Tex. App.-Tyler 1997, no pet.). Examples of good faith dismissals
include cases where the government needed to do additional investigation. See Deeb, 815 S.W.2d
at 705. The trial court appears to have found that the dismissal was not in good faith and that the
State dismissed because it was not ready for trial. The court also noted that there was "no evidence
of any further investigation in the case." 

 Using Appellant's beginning point of the first indictment, the delay is either from July 2005
to April 2006 and from November 2006 to August 2007, if the time between indictments is not
counted, or from July 2005 to August 2007 if it is counted. These periods of approximately sixteen
months or approximately two years are long enough to trigger further speedy trial analysis. See
Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (delay of thirteen months is prima
facie unreasonable); see also Cantu, 253 S.W.3d at 281 (delay of seventeen months is sufficient to
trigger further analysis).

 The second factor is the reason for the delay. See Shaw, 117 S.W.3d at 889. The State bears
the burden of showing the reason for the delay. Id. The reasons for delays count more or less
heavily against the government depending on the cause of the delay. A "deliberate attempt to delay
the trial" should be weighed heavily against the government. Barker, 407 U.S. at 531, 92 S. Ct. at
2192. A "more neutral reason such as negligence or overcrowded courts should be weighed [against
the government] less heavily." Id. A valid reason for the delay should not be weighed against the
government at all. Id. And delay that is attributable in whole or in part to the defendant may even
constitute a waiver of a speedy trial claim. Id., 407 U.S. at 528-30, 92 S. Ct. at 2191-92.

 Appellant is responsible for some of the delay. Appellant filed for two continuances in the
first indicted case, accounting for about three months of delay, from October 2005 to January 2006. 
Furthermore, Appellant filed for and received a continuance in the second indicted case, although
it appears this resulted in a delay of only about a month. The State filed a continuance in the first
case, but it is not clear that Appellant opposed that motion. The two biggest remaining delays were
caused by congestion in the trial court's calendar in the first indicted case because of a capital murder
trial and delay caused by the second indicted case having been filed in the wrong district court. 

 Congestion of the calendar counts against the State, although with less weight than other
reasons for delay. See Barker, 407 U.S. at 531, 92 S. Ct. at 2192; Shaw, 117 S.W.3d at 890. The
other delay was a result of the second indicted case not being returned to the original trial court. This
was apparently a mistake. Cases in Smith County are assigned to a district court based on the week
the defendant is arrested. The trial court judge explained that reindicted cases are returned to the
court in which the first indictment was filed to prevent forum shopping. This was not done. Instead,
the second indicted case was filed in another district court, and it was not returned to the original
district court until it reached a position on the docket where it was ready for trial. This period of
delay was from November 2006 to April 2007. There is no evidence that this delay was intentional,
and so it counts against the State less heavily. See Cantu, 253 S.W.3d at 279 n.7. (1) Finally, there is
the delay due to the dismissal of the first indictment, which the trial court found was done to delay
the trial.

 The trial court characterized the length of the delay as "enormous" and was not persuaded
that a justification for the delay was offered. These conclusions are supported by the record, and the
trial court properly weighed the lack of justification for most of the delay against the State.

 The third factor is the defendant's assertion of her right to a speedy trial. Shaw, 117 S.W.3d
at 890. In this case, Appellant was tried very quickly after her assertion of her right. She filed her
motion to dismiss in July 2007 and was tried in August 2007. This is a relatively short period of
time. Appellant argues that she asserted her right to a speedy trial by opposing the dismissal of the
original indictment. We disagree. Appellant did oppose a continuance, but she did not specifically
assert her right to a speedy trial at that time, and she did not file a motion for a speedy trial until the
second indicted case had been pending for seven months. The trial court found that Appellant had
not asserted her right to a speedy trial, and that conclusion is supported by the record. The factor
weighs against Appellant's claim. 

 The fourth factor is prejudice to the defendant. Barker, 407 U.S. at 532, 92 S. Ct. at 2193. 
Prejudice may come in the form of pretrial incarceration, anxiety or concern, or an actual impairment
of the defense. Id. Appellant concedes that she was not incarcerated prior to trial. With respect to
the anxiety and concern subfactor, Appellant argues that she was denied access to her son, who was
the victim of the offense, as a result of the delay. However, part of the reason for this is because
Appellant made a decision not to go forward with a pending civil action to return her child to her
because of the pending criminal case. That might have been a wise decision, but it suggests that the
anxiety and concern were not so arduous that she was unable to make strategic decisions. The trial
court observed Appellant testify about her anxiety and was not persuaded that the delay caused her
acute anxiety. (2) The trial court could have reasonably found that the anxiety and concern factor did
not weigh heavily in Appellant's favor, if at all.

 Finally, there is the subfactor of impairment of Appellant's defense. A woman and her
husband were Appellant's neighbors, and their home was quite close to Appellant's home. 
According to Appellant's testimony, the woman could have testified that Appellant was a good
mother. Appellant's trial counsel testified that the husband could have provided testimony that
Appellant was a good mother, that the child had not been crying prior to the injury, and that the
neighbors did not hear Appellant yelling or making a lot of noise around the time the child was
injured. Appellant's counsel said that the testimony about the baby crying and noise surrounding
the assault could be important because, in his experience, those facts often appeared in cases where
children were alleged to have been assaulted. The woman died near the end of 2005, before the first
indictment was returned. Her eighty-six year old husband, according to counsel's testimony, had
diminished as a witness during the pendency of the case. 

 The trial court considered the evidence Appellant presented about these witnesses and
determined that Appellant's defense was not negatively affected. This is essentially a fact based
determination. The trial court did allow that it would consider permitting Appellant to present
evidence about the delay and the problems with witnesses if the appropriate situation presented itself. 
Appellant did not accept the trial court's offer, and whatever noise there was at the time of the
assault was not an important issue in the trial. Instead, Appellant's defense was that she did not
cause the injury or that the injury occurred when she fell with the child.

 In conclusion, we hold that the trial court did not err. The delay is long, sixteen months or
twenty-four months, either of which is long enough for further inquiry. The reasons for the delay
include continuances by the parties and the case having been assigned to the wrong court. But, the
State did not fully justify the delays, and this factor weighs in Appellant's favor. The time from
Appellant's assertion of the right to trial was quite short, and the trial court's finding that Appellant's
defense did not suffer from the loss of the two witnesses is supported by the record and is not an
abuse of discretion. The right to a speedy trial does not offer protection against the simple passage
of time, but serves as "an important safeguard to prevent undue and oppressive incarceration prior
to trial, to minimize anxiety and concern accompanying public accusation and to limit the
possibilities that long delay will impair the ability of an accused to defend himself." Marion, 404
U.S. at 320, 92 S. Ct. at 463. Appellant was not incarcerated prior to trial, the trial court did not find
that her anxiety was high, and the trial court did not find that her defense was impaired. 
Accordingly, the trial court did not err in holding that Appellant was not denied her right to a speedy
trial. (3) We overrule Appellant's first issue.


Due Process

 In her second issue, Appellant argues that her right to due process was violated by the length
of time it took the State to obtain the indictments. The Due Process Clause of the Fifth Amendment
to the United States Constitution requires dismissal of an indictment if it is shown at trial that
preindictment delay caused substantial prejudice to a defendant's right to a fair trial and that the
delay was an intentional device to gain a tactical advantage over the accused. Marion, 404 U.S. at
324, 92 S. Ct. at 465; Spence v. State, 795 S.W.2d 743, 749 (Tex. Crim. App. 1990). This
requirement is like the speedy trial requirement of the Sixth Amendment. However, the protection
afforded is narrower, and the right to due process is violated only if the preindictment delay violates
the "fundamental conceptions of justice which lie at the base of our civil and political institutions." 
See United States v. Lovasco, 431 U.S. 783, 791, 97 S. Ct. 2044, 2049, 52 L. Ed. 2d 752 (1977).

 There were two periods of preindictment delay-approximately nine months from arrest to
the first indictment, and approximately six months from the dismissal of the first indictment to the
return of the second. However, Appellant cannot show that the delay caused substantial prejudice
to her right to a fair trial. Appellant's primary allegation of prejudice is that she lost her neighbors
as witnesses because of the preindictment delay. However, one of the witnesses died within months
of the offense, making it unlikely that she could have been a witness even if Appellant had been
indicted at the first opportunity. More importantly, the trial court found that the loss of the
neighbors' testimony did not prejudice Appellant's right to a fair trial. (4) For reasons explained in our
discussion of Appellant's first issue, this conclusion is supported by the record. Accordingly, we
hold that the trial court properly found that Appellant's due process rights were not violated by the
delays in bringing indictments. (5) We overrule Appellant's second issue.

Disposition

 Having overruled Appellant two issues, we affirm the judgment of the trial court.


 BRIAN HOYLE 

 Justice

Opinion delivered January 30, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.


(DO NOT PUBLISH)
1. Appellant was on inquiry notice of the local rule about assignment of cases, but the policy of returning
cases to their original court appears to be unwritten.
2. The trial court differentiated between anxiety suffered by a hypothetical guilty person as opposed to the
anxiety of a not guilty person. Whether pretrial anxiety causes prejudice does not depend on whether the person is
guilty of the offense, but the trial court observed Appellant and did not conclude that she had showed anxiety.
3. In Marion
, when considering a related due process claim, the Court stated that events at the trial may
demonstrate actual prejudice. Marion, 404 U.S. at 326, 92 S. Ct. at 482. Appellant does not raise any argument
based on the events at the trial.
4. Appellant also argues that the delay extended the period of time she did not have access to her child. 
Appellant does not provide any authority for the proposition that this is the kind of substantial prejudice against
which the Due Process Clause offers protection. 
5. The trial court did find that the State dismissed the first indictment for "purely tactical reasons." The State
denies this. The court was persuaded that the State was unprepared for trial and dismissed the first indictment rather
than go to trial without its expert witnesses. However, the dismissal was not used by the State for the purpose of
damaging Appellant's case. See United States v. Crouch
, 84 F.3d 1497, 1514 n.23 (5th Cir. Tex. 1996) (en banc)
(differentiating between delay to deny the defense evidence and delay to affirmatively strengthen the government's
case).