In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00476-CR
_____

THE STATE OF TEXAS, Appellant

V.

ANTHONY LEON MATHEWS SR., Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CR30204

**MEMORANDUM OPINION**

The State filed this appeal asking us to review the trial court's decision that the delays in bringing the defendant's case to trial violated the defendant's constitutional right to receive a speedy trial. *See* U.S. CONST. amend. VI. Given the length of the delays attributable to the State, the deferential standard of review that applies to the trial court's express and implied findings of historical fact regarding the causes of the delays, and the State's failure to present evidence rebutting the

1

defendant's evidence suggesting that the delays were prejudicial, we affirm the trial court's judgment.

Background

In August 2012, Anthony Leon Mathews Sr. was stopped by a police officer in Cleveland, Texas, for a traffic violation. Officer Paul Young, the officer who conducted the stop, described the circumstances surrounding the stop in a probable cause affidavit,[1] which is used in the opinion solely for the purpose of describing the circumstances that led to the stop. After Officer Young stopped Mathews, Mathews told Officer Young that there were some drugs on the floorboard of the car. When Officer Young searched the car, he found cocaine and marijuana on the car's floorboard; after discovering the contraband, Officer Young warned Mathews of his *Miranda*[2] rights. Officer Young arrested Mathews, and then took him to jail.

A Department of Public Safety crime lab report,[3] which indicates that cocaine was in the material that Officer Young recovered after stopping Mathews, is also in

---

[1] Officer Young did not testify in the hearing on Mathews' motion to dismiss. After the hearing, the State filed a copy of Mathews' probable cause affidavit with the District Clerk, so Young's report was not included in the evidence the trial court considered in ruling on Mathews' motion.

[2] *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

[3] The State also filed the crime lab report after the trial court ruled on Mathews' motion to suppress, so the trial court did not consider it in ruling on

the record that is before us in the appeal. The record on appeal[4] reflects that Mathews bonded out of jail on the same day that he was arrested.

In May 2013, a grand jury indicted Mathews for possessing cocaine in an amount of less than one gram. The record shows that in April 2016, nearly three years after he was indicted, Mathews made his first court appearance in response to the indictment charging him with possession of cocaine. The reporter's record from the trial court's April 2016 docket call reflects that Mathews told the trial court that he was in the process of hiring an attorney and that the case was rescheduled on another docket. In June 2016, Mathews appeared in court, advised the trial court that he was still "trying to find a lawyer[,]" and the court reset the case. In August 2016, Mathews appeared for another docket call with an attorney. During the August 2016 docket call, Mathews' attorney advised the court that Mathews would waive his right to be arraigned, and that Mathews had decided to plead not guilty to the indictment. In response, the court set the case on its October 2016 docket. When the court called

---

Mathews' motion. While the State relies on the information in Officer Young's probable cause affidavit and the crime lab report to support its argument that Mathews was not prejudiced by the delays that occurred in bringing Mathews' case to trial, as we explain in the opinion, the State is not entitled to rely on the information in these documents because the trial court did not consider them in ruling on the motion.

[4] Unless stated otherwise, documents that we refer to in the opinion were considered by the trial court in ruling on Mathews' motion.

3

the case on its October 2016 docket, Mathews' attorney advised the court that given the delays that had occurred in Mathews' case, she intended to file a motion asserting that Mathews had been deprived of his right to a speedy trial. The trial court reset the case for December 2016, noting in its order resetting the case that it would hear Mathews' "Motion for speedy trial" in December.

On December 2, 2016, Mathews filed two motions asserting his right to a speedy trial. One of the motions is styled "Motion for Speedy Trial and Alternatively Motion to Dismiss;" the other is styled "Motion to Dismiss for 6th Amendment Violations." Mathew's Motion for Speedy Trial and Alternatively Motion to Dismiss asked that the trial court set Mathews' case for trial on or before December 21, 2016. Mathews' Motion to Dismiss for 6th Amendment Violations asked that the trial court dismiss the case because the delays allegedly had violated Mathews' right to a speedy trial. *See* U.S. CONST. amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial").

On December 7, 2016, the trial court heard both of Mathews' motions. During the hearing, the prosecutor announced that the State was ready to try Mathews' case beginning December 12, 2016. In response to that announcement, Mathews' attorney asked the trial court to hear Mathews' motion to dismiss. During the hearing on the motion to dismiss, the prosecutor advised the court that the State could prove

4

that delays had occurred in bringing the case to trial, but "[t]hat's all I can show." The prosecutor also stated: "I cannot tell you the reason for the delay, except that it fell off the docket."

The State called the Liberty County District Clerk, Donna Brown, as its only witness in the hearing. The prosecutor called Brown to explore why Mathews' case had fallen "off the docket." During the hearing, Brown testified that in 2013, the deputy clerk responsible for sending out notices of the dockets in criminal cases left her job as deputy clerk, and that based on the records that were still available in the clerk's office, she could not determine whether the deputy clerk responsible for sending out notices before April 2016 had ever notified Mathews that he was expected to appear in court. When asked why Mathews' case had not been routinely rescheduled on the court's docket after June 2013, Brown indicated that she did not know. Brown explained that records in the District Clerk's office were no longer available to show whether the parties were notified of the court's June 2013 docket. According to Brown, from the records available, no explanation could be provided about why the clerk's office had failed to place Mathews' case on dockets between June 2013 and April 2016.

Mathews' attorney called Mathews and his wife, Louise, in support of his motion to dismiss. Mathews and Louise both testified that they were living at the

5

same residence where they lived when Mathews was arrested in 2012. According to Mathews, his home address is listed in the police report.[5] Mathews explained that he had only a vague recollection of the events leading to his arrest in 2012. According to Mathews, he was driving a rented car when he was arrested, and he indicated that the records regarding the rental were no longer available because the people who ran the rental business were no longer there. Matthews testified that he was alone when the rental car he was driving was stopped in Cleveland, but he was not asked in the hearing to explain what happened during the stop, where the drugs were found, or whether he admitted during the stop that the drugs in the car belonged to him. Mathews also addressed when he was first notified to appear in court. Mathews testified that after he was arrested, he checked regularly with his bail bondsman about court dates, but his bail bondsman never told him until 2016 that he was required to appear before the court regarding his arrest.

On cross-examination, Mathews agreed that he was unaware of why the rental records might be important to his defenses in the case. Matthews also agreed that he and Officer Young were the only witnesses to the stop, that the car he was driving had been rented from Avis, and that he had not checked with Avis to see if Avis still

---

[5] No police report of the stop was offered or admitted into evidence by either party during the hearing.

had its records regarding the rental. Mathews stated that until 2016, he was unware that a grand jury had indicted him for possession of a controlled substance. Mathews also testified that before April 2016 no one ever told him that he was required to appear in court to respond to the indictment charging him with possession.

On redirect, Mathews stated that the records regarding the rental of the car would show who rented the car immediately before his wife rented it. He also explained that the records, if available, were needed so that he could determine if the car he was driving when he was stopped had been cleaned before it was rented by his wife. Mathews testified that recently, he had experienced difficulty in obtaining job interviews because the case had not been resolved.

Generally, Louise confirmed Mathews' testimony regarding the fact that they live at the same address where they lived when Mathews was arrested, that she rented the car Mathews was driving when he was arrested in Cleveland, and before 2016, no one had ever notified them that Mathews was expected to appear in court. Louise agreed that she rented the car from an Avis location in Houston, she claimed that she no longer had the paperwork relating to the rental, and she testified that she was unaware of the fact that she might need the paperwork on the rental in connection with Mathews' case.

In final argument, Mathews' attorney focused on the prosecutor's failure to produce any testimony excusing the delays that had occurred in bringing Mathews' case to trial. With respect to how Mathews had been prejudiced by the delays, Mathews' attorney argued that Mathews' difficulty with recalling the details of the stop "could be important for my case to defend him if there's a need for a Motion to Suppress[,]" and she argued that Mathews did not "have any access to the records from the date that are important in checking the history" on the rental. The prosecutor pointed out in his argument that Mathews had not complained about any delays when he first appeared in court in April 2016, noting that Mathews first asserted his right to a speedy trial in December 2016. According to the prosecutor, the evidence in the hearing failed to establish that Mathews had been prejudiced by the delays, and he suggested that Mathews could not have been anxious about a case he never knew existed until 2016. The prosecutor stated that Mathews had failed to show the delays had actually prejudiced his defense. The trial court asked the prosecutor if the State had a videotape of the stop. The prosecutor indicated that an electronic recording of the stop existed, but that in attempting to review it, he had difficulty getting the recording to work. The prosecutor stated that based on his efforts to play the recording before the hearing, that he could not tell if the recording was playable. At that point the trial court commented, "You see[,] that would be problematic, all the

time, you know, where memory would be very important." The trial court's comments about how Young might have been prejudiced by the delays might be relevant in Mathews' case are significant given the State's failure to provide the trial court with Officer Young's account or other evidence addressing what happened during the stop.

When the hearing concluded, the trial court made oral findings that there was no evidence that Mathews had been notified of any hearings before 2016, that Mathews first learned in 2016 that he had been indicted for possession, and that the delays in Mathews' case violated Mathews' right to a speedy trial. The trial court signed an order dismissing Mathews' case when the hearing concluded. Neither party asked the trial court to provide written findings.

Standard of Review

We note our jurisdiction over the State's appeal. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(1) (West Supp. 2016) (authorizing the State to appeal from an order dismissing an indictment). In determining whether a defendant has been denied his constitutional right to a speedy trial, courts are required to balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) whether the accused suffered prejudice. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App.

9

1997). By itself, no single factor is sufficient to require a trial court to find that a Sixth Amendment violation occurred. *See Barker*, 407 U.S. at 530, 533; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Instead, in evaluating speedy trial claims, courts are required to engage in a balancing process to determine whether the delays in bringing a defendant's case to trial deprived the defendant of a speedy trial. *See Barker*, 407 U.S. at 533; *Zamorano*, 84 S.W.3d at 648; *see also* U.S. CONST. amend. VI.

In reviewing a ruling on a speedy trial claim, we apply a bifurcated standard of review. *See Zamorano*, 84 S.W.3d at 648. First, the factual components of the trial court's ruling are reviewed using an abuse-of-discretion standard. *Id*. In this case, since the trial court ruled in Mathews' favor on his motion to dismiss and the trial court did not reduce its findings to writing, we presume that the trial court resolved all of the disputed facts in Mathews' favor. *Id*. Consequently, in reviewing the trial court's ruling, we must defer to the trial court's historical findings if those findings are supported by the record. *See id*.

In reviewing legal questions raised by a motion for speedy trial, including the manner the trial court balanced the *Barker* factors, a *de novo* standard applies to our review. *See id; Johnson v. State*, 954 S.W.2d at 771. We also apply a *de novo* standard in balancing the *Barker* factors. *Id*.

10

Analysis

First, we address the length of the delays that occurred in Mathews' case. The record reflects that the trial court dismissed Mathews' case on December 7, 2016, over four years after he was arrested. *See Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (noting that the length of delay is measured from the time the defendant is arrested or formally accused). Generally, upon the defendant's asserting a speedy trial right, courts have considered delays approaching one year to be of a sufficient length to trigger the trial court's duty to determine whether a constitutional violation occurred. *See Doggett v. United States*, 505 U.S. 647, 652 & n.1 (1992); *Shaw*, 117 S.W.3d at 889. In its brief, the State acknowledges that the delays that occurred in Mathews' case required the trial court to conduct a *Barker* inquiry. *See Barker*, 407 U.S. at 531 (noting that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (presuming that a thirteen month delay was unreasonable in reviewing the trial court's ruling denying the defendant's motion complaining he did not receive a speedy trial). Additionally, because the length of the delays in Mathews' case "stretched well beyond the bare minimum needed to trigger judicial examination of the claim, this factor—in and of itself—weighs heavily against the State." *Zamorano*, 84 S.W.3d at 649.

11

Second, we consider the evidence relating to the reasons for any unexpected delays. When the delay exceeds postponements that are normal in a criminal case, the burden of justifying the delays falls upon the State. *See Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); *Turner v. State*, 545 S.W.2d 133, 137-38 (Tex. Crim. App. 1976).

The evidence showing why the delays in a case occurred and who is responsible for the delays affect how heavily the length of the delays are to be weighed against the State. *See Zamorano*, 84 S.W.3d at 649. In its brief, the State argues that "much, if not all of the delay appears to be the result of negligence." The trial court's comments reflect that the court blamed the delays that occurred in Mathews' case from 2013 until April 2016 on clerking errors, which occurred because a deputy clerk failed to place the case on the trial court's dockets and failed to notify the parties about the case. However, the evidence in the hearing does not show that the deputy clerk deliberately or intentionally delayed Mathews' trial, and the statements the trial court made during the hearing do not show otherwise. For example, in granting the motion, the trial court commented that the delays in Mathews' case occurred because "the clerk doesn't appear to be taking care of business."

12

Mathews argues the record is silent about the reasons for the various delays in bringing his case to trial. However, in our opinion, the record is not silent about all of the periods of delay. There is evidence supporting the trial court's conclusion that the delays that occurred between May 2013 and April 2016 were due to the negligence of a deputy clerk. Since these delays were shown to have been the result of a deputy clerk's negligence, that period of the delay weighs against the State but it is weighed less heavily than an error caused by the intentional or deliberate act of a county employee. *See Zamorano*, 84 S.W.3d at 649 (citing *Barker*, 407 U.S. at 531).

The record supports the trial court's conclusion that a deputy clerk's negligence accounted for a significant period of the delays that occurred in bringing Mathews' case to trial. However, the period that is attributable to the clerk does not account for all of the periods of delay, as the record shows that approximately eight months of the delays relate to the trial court's decisions allowing Mathews to obtain an attorney and to allow Mathews' attorney time, after Mathews obtained counsel, to prepare the case for trial. Given that eight months is the time the trial court gave Mathews to allow him to prepare for trial, this eight-month period does not count against the State. *See State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999) (noting that valid reasons for delays in a case do not count against the State).

13

Nonetheless, the record shows that a delay of more than three years is attributable to the State. With respect to the approximate nine-month delay between Mathews' arrest in August 2012, and his indictment in May 2013, the State failed to establish that the period of delay was normal or to establish why it took nine months to indict Mathews in the case. Since the State bore the burden of excusing delays, we are also required to presume that no valid reason exists for the nine-month delay. *See Turner v. State*, 545 S.W.2d at 137-38. In our opinion, the record shows that approximately forty to forty-two months of inexcusable delays are attributable to the State. *See Zamorano*, 84 S.W.3d at 650. Additionally, the record supports the trial court's decision to weigh the inexcusable delays against the State. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

Third, we consider whether the defendant timely demanded that he be given a speedy trial. *Barker*, 407 U.S. at 528-29, 531-32; *see also Munoz*, 991 S.W.2d at 825 (placing the burden on the defendant to prove that he timely demanded his right to a speedy trial). In its brief, the State argues that Mathews should have immediately requested a speedy trial when he first appeared in court in April 2016. According to the State, the fact that Mathews did not immediately demand a speedy trial shows that he "did not really want a speedy trial and that he was not prejudiced by the lack of one." However, the trial court's comments in the hearing reflect that the trial court

14

attributed Mathews' failure to immediately demand a speedy trial to the fact that he was not represented by counsel at that time.

Courts are often skeptical about defendants who complain about delay, because delays in criminal cases often work to the defendant's advantage. *See Barker*, 407 U.S. at 521. Nevertheless, unreasonably long delays may sometimes result in the defendant's inability to present exculpatory evidence. *Id*. at 532. While defendants in criminal cases have no duty to bring themselves to trial, a defendant's failure to timely demand a speedy trial may sometimes make it difficult for the defendant to prove that the delays were prejudicial. *Id*. at 527, 531-32.

While Mathews did not demand a speedy trial when he appeared without the benefit of counsel in April 2016, he did demand a speedy trial in December 2016. Additionally, the record shows that during the docket call that occurred in October 2016, the State and the trial court were advised by Mathews' attorney that she planned to file a motion asserting that Mathews had been deprived of his right to a speedy trial. *See Zamorano*, 84 S.W.3d at 651 n.40 (noting the difference between filing a motion to dismiss alleging a speedy trial violation and a motion seeking a speedy trial). The State has not argued that it advised the trial court during the docket call that occurred in October 2016 that it was ready for trial, and the record shows that Mathews demanded a speedy trial less than four months after obtaining counsel.

Although Mathews' attorney did not file a motion seeking a speedy trial in August 2016 when she first appeared in court representing Mathews, the trial court's decision granting Mathews' motion reflects that the trial court did not find that Mathews failed to timely assert his right to a speedy trial because his attorney failed to file a motion demanding a speedy trial before December 2016. The State failed to develop a record to show why Mathews' attorney waited four months before demanding a speedy trial, and it is possible the trial court viewed the four-month delay as the period Mathews' attorney needed to investigate and consult with Mathews regarding the defenses available to Mathews in the case. Moreover, the record does not show that Mathews' delay in demanding a speedy trial prejudiced the State. *See Zamorano*, 84 S.W.3d 652.

The fourth and final *Barker* factor addresses whether the defendant was prejudiced by any periods of unjustified delays that are attributable to the State. *See Barker*, 407 U.S. at 532. Prejudice flowing from any periods of unjustified delay are determined by examining the various interests the Sixth Amendment is designed to protect, which include (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defendant's ability to defend against the claims the State has brought against him in a case were impaired. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826.

16

Of these, evidence demonstrating that a defendant's ability to defend against the charges in a case were impaired is the most serious consideration because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

In *Munoz*, the Court of Criminal Appeals explained that a defendant must meet his burden to show prejudice from any periods of unjustifiable delays, but he is not required to show "actual prejudice" from them. *Munoz*, 991 S.W.2d at 826 (citation omitted); *State v. Wei*, 447 S.W.3d 549, 555 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In Mathews' case, the evidence presented to the trial court in the hearing on Mathews' motion to dismiss does not show that Mathews suffered any periods of oppressive pretrial incarceration. Instead, the record shows that he bonded out of jail on the day he was arrested. There was also no evidence showing that Mathews suffered anxiety beyond that normally expected from the fact that the defendant had been indicted for a felony. *See Shaw*, 117 S.W.3d at 890 (noting that the record in that case failed to show "any anxiety or concern beyond the level normally associated with being charged with a felony").

However, there is some evidence from which the trial court could have determined that the delays attributable to the State might have prejudiced Mathews' defense. *See Barker*, 407 U.S. at 532. Based on the testimony in the hearing, the trial

17

court could reasonably conclude that Mathews could no longer obtain all of the records that would be relevant to his wife's rental of the car he was driving when he was stopped. Since the State failed to provide the trial court with the evidence in its possession showing that Mathews told Officer young that he would find drugs on the floorboard of the car, the trial court could have reasonably inferred that the records regarding the rental were important in proving whether Mathews knowingly or intentionally possessed the drugs that were found in the car and in proving that the drugs belonged to Mathews. The reporter's record of the hearing reflects that the trial court commented the rental records "would be a factor" because "there could be drugs in a car that was rented" since "the drugs were not on his person[.]" Additionally, the reporter's record of the hearing reflects that the State acknowledged that it had a video and audio recording of the stop, and that the State had been unable to get the recording to work. Given Mathews' testimony that he could no longer recall the details about the stop, the trial court could have reasonably viewed the recording as relevant evidence no longer available for Mathews to use in the trial. *See Shaw*, 117 S.W.3d at 890.

When the defendant has shown that he has suffered some prejudice from the delays attributable to the State, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the

18

ordinary and inevitable delay." *Munoz*, 991 S.W.2d at 826 (citation omitted); *Wei*, 447 S.W.3d at 555. In this case, the State failed to show that the records concerning the rental of the car were still available, to prove that the recording of the stop was still available, or to prove that rental records and the recording were irrelevant to Mathews' defense. Additionally, the State failed to produce any testimony showing that Officer Young and the employee of the crime lab who tested the material Officer Young took from the car were still available to testify in Mathews' trial.

In its brief, the State points to Officer Young's probable cause affidavit and to the crime lab report as evidence showing that Mathews was not prejudiced by any of the delays that occurred in bringing Mathews to trial. Those documents were not before the trial court when it ruled on Mathews' motion, and we cannot consider them in deciding whether the trial court properly granted the motion. *See Davis v. State*, 227 S.W.3d 733, 737 (Tex. Crim. App. 2007) (stating that the court of appeals properly declined to take judicial notice of exhibits that were not considered by the trial court and were not part of the appellate record); *see also Jack v. State*, 149 S.W.3d 119, 121 n.1 (Tex. Crim. App. 2004) (explaining that appellate courts cannot consider factual assertions outside the appellate record); *Gaston v. State*, 63 S.W.3d 893, 900 (Tex. App.—Dallas 2001, no pet.) (noting that generally, "appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an

appeal or to resolve matters ancillary to decisions that are mandated by law . . ." and "are reluctant to take judicial notice of facts that go to the merits of the dispute"). Even though these documents contain information that tend to rebut Mathews' claims of prejudice, our review of the trial court's ruling is required to be based upon the "arguments, information, and evidence that was available to the trial court at the time it ruled." *Shaw*, 117 S.W.3d at 889. Consequently, we cannot consider the probable cause affidavit and crime lab report or the arguments the State makes in its brief relying on these documents since the State failed to introduce them in the hearing. *See id*.

We hold the trial court did not abuse its discretion by inferring the delays attributable to the State were prejudicial to Mathews' defense. *See Zamorano*, 84 S.W.3d at 648 (applying abuse of discretion standard to the factual component of the trial court's ruling). After weighing the fourth *Barker* factor, we conclude that it also weighs in Mathews' favor.

In balancing the four *Barker* factors as a whole, and using a *de novo* standard of review to balance these factors, we conclude that the overall balance favors affirming the trial court's ruling on the motion to dismiss. *See Barker*, 407 U.S. at 533-36. We hold the trial court properly dismissed Mathews' case, we overrule the State's sole issue, and we affirm the trial court's order.

AFFIRMED.

                    _____

                        HOLLIS HORTON
                            Justice

Submitted on May 24, 2017
Opinion Delivered July 19, 2017
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.