**James William SHAW, Appellant,**

v.

**The STATE of Texas.**

No. 1539–02.

Court of Criminal Appeals of Texas.

Oct. 15, 2003.

Joseph L. Lanza, Houston, for appellant.

Betty Marshall, Assist. St. Atty., Matthew Paul, State's Attorney, Austin, for state.

## OPINION

HOLCOMB, J., delivered the opinion of the unanimous Court.

The court of appeals held that the trial court erred in denying appellant's motion to dismiss for want of a speedy trial. *Shaw v. State*, No. 06–01–00130–CR, 2002 WL 1300044 (Tex.App.-Texarkana 2002) (unpublished). We reverse.

### *The Relevant Facts*

On December 10, 1997, a Waller County grand jury indicted appellant for aggravated sexual assault of a child younger than fourteen years. See Tex. Pen.Code § 22.021. On March 18, 1998, the State brought appellant to trial under the indictment, but that trial ended in a hung jury. The trial court set the case for re-trial on August 24, 1998, but the case was not reached on that date, and numerous resets followed.

On August 29, 2000, appellant, citing both the Sixth Amendment to the United States Constitution and Article I, § 10, of the Texas Constitution, filed a written motion to dismiss the indictment for want of a speedy trial. In his motion, appellant, who had been out on bond since being indicted, argued that the delay had nevertheless "prejudiced [him] by causing him mental anguish." On February 23, 2001, just before appellant's re-trial commenced, he urged his motion to the trial court for the first time, and the trial court held a hearing thereon. The hearing, at which neither appellant nor the State offered any evidence, was brief and proceeded in relevant part as follows:

DEFENSE COUNSEL [Gerald Fry]: I would submit to the court that there has been cases tried in this court that are not as old as my case; and that my case should have had preferential treatment and tried earlier. The defendant being on bond and under the subject of having a trial, the mental pressure and so forth, and him trying to schedule his life to make court appearances has been horrendous; and we would ask the court to dismiss the case for want of a speedy trial.

THE COURT: Anything else?

THE STATE [Doug Pettit]: Judge, the State would respond in that there are numerous continuances in the file from the date of the last trial setting until today filed by the defendant. It is an old case, but it's not the State's fault that this case has not gone to trial. The dockets are crowded; the motions for continuance have been granted. We are ready to go to trial. We've been ready for trial. It's just the cases have not been reached. Last time this case was set for trial, it was agreed by Mr. Fry to pass the case because one of his witnesses was in the hospital. Is that cor-

rect, Gerald? The defendant's mother was in the hospital.

DEFENSE COUNSEL: Not this last time. One time I think there was, yeah.

THE STATE: I don't think it's on the State. It's not the fault of the State that this case is not going forward. The motions for continuance have been filed by the defendant.

THE COURT: Y'all tried it in '98. I believe there was a mistrial.

THE STATE: Yes.

* * *

THE COURT: You've alleged that there has been some motions for continuance by the defendant.

THE STATE: Yes, Judge.

THE COURT: There may have been. I'm not seeing them. . . . Show me some motions for continuance. Your motion, I think it's completely discretionary. I really don't think it's good, but if there's any motions for continuance after '98, the docket sheet doesn't reflect that there was an agreement. It just says it was set from April the 10th [2000] to June 26 [2000] at 2:00 p.m. and July 10 [2000] at 9:00 a.m. Then it doesn't say. There is no other entry on the docket sheet until today that I'm seeing. Didn't y'all have it set for January the 8th?

THE STATE: That's the date when I originally got on the case, and Mr. Fry's client's mother was in the hospital.

DEFENSE COUNSEL: We asked that it be tried the 19th or later because she was going to be out of town when it was set that day. . . . We asked 19th or later because she was out of town. Then we got today's date, Your Honor.

* * *

DEFENSE COUNSEL: I know I filed a motion for continuance. I don't know if I filed one or two at different times during the years. I don't know when.

THE STATE: There has been one motion for continuance filed, Judge.

DEFENSE COUNSEL: I would agree that there has been at least one motion for continuance filed.

THE COURT: When was that filed?

DEFENSE COUNSEL: I know I had a case up in Dallas. I'm pretty sure I filed a motion for continuance for that.

THE COURT: Well, did you urge this motion to dismiss back in these other 2000 settings? You filed it in October [sic] . . . .

DEFENSE COUNSEL: I would agree with the prosecutor and have a ruling on it at the time it was set for trial.

* * *

THE STATE: Judge, I have a motion for continuance when the case was set for trial August 24, 1998, after the first trial. It was filed 8/21/98.

THE COURT: There is Mr.—

THE STATE: Mr. Fry's motion for continuance. That was granted. Doesn't say it was granted. But, it was granted in August of '98.

THE COURT: Does anybody have any resets, any copies of that?

THE STATE: I notice a reset signed by Judge Beck, Mr. Shaw, Mr. Fry setting the case from January 4, 1999, for pretrial and then jury trial January the 11th, 1999.

THE COURT: I'm still with the motion to dismiss.

THE CLERK: The reset should be in the order that they were—

THE COURT: They are not at the back of the file. Okay. Here's a reset. I know I'm going for April. It was reset for July for jury trial. There ought to be a reset after October. I'm going to

deny your motion to suppress under the Speedy Trial Act [sic] at this time.

The jury later found appellant guilty and assessed his punishment at imprisonment for eight years, probated for five years.

On direct appeal, appellant brought five points of error. He argued in his first point that the trial court erred in denying his motion to dismiss. In particular, appellant argued that (1) he filed only one motion for continuance during the interval between his two trials; (2) he "asserted his right to a speedy trial by filing a motion to dismiss"; (3) he "had to wait those many months for the second trial, with the attendant worry and anxiety"; (4) "overcrowded dockets do not excuse trial delays"; (5) "[t]he delay in this case is so unreasonable that it alone is sufficient to find that the trial judge should have dismissed this case"; and (6) "due to the delay in reaching the second trial, a presumption arises that the defense was prejudiced."

The court of appeals sustained appellant's first point of error, reversed the trial court's judgment, and rendered a judgment of acquittal. *Shaw v. State,* No. 06–01–00130–CR, *supra.* The court of appeals explained its holding thusly:

> Even though Shaw failed to show prejudice, no single *Barker* factor[1] is a necessary or sufficient condition to the finding of a speedy trial violation. We consider the related *Barker* factors, together with such other circumstances as may be relevant. In this case, the thirty-five-month delay from the first trial to the second was unreasonable and excessive. Although the delay may not have been intentional, the State offered no tenable reason for it. By moving to dismiss the indictment, Shaw asserted his right to a speedy trial. The trial court erred in denying this motion. We sustain Shaw's first point of error.

*Id.,* slip op. at 12 (citations and some punctuation omitted).

We subsequently granted the State's petition for discretionary review to determine whether the court of appeals erred. See Tex.R.App. Proc. 66.3(c).

### Analysis

■ The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial."[2] This right was made applicable to state criminal prosecutions by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In addition, Article I, § 10, of the Texas Constitution provides that "[i]n all criminal prosecutions the accused shall have a speedy ... trial." If a violation of the right to a speedy trial is established, the proper remedy is dismissal of the prosecution with prejudice. *Strunk v. United States,* 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Hull v. State,* 699 S.W.2d 220, 224 (Tex.Crim.App.1985).

■ In determining whether a criminal defendant has been denied his federal or state constitutional right to a speedy trial, a court must use a balancing test in which the conduct of both the State and the defendant are weighed. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). The factors to be

---

**1.** See discussion *infra.*

**2.** See W. LaFave, *et al., Criminal Procedure* §§ 18.1–18.2 (2nd ed.1999) (discussing Sixth Amendment right to a speedy trial).

weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. 2182. No single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy trial. *Id.* at 533, 92 S.Ct. 2182.

 An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Dragoo v. State,* 96 S.W.3d 308, 313 (Tex.Crim.App. 2003). And, the appellate court must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *State v. Munoz,* 991 S.W.2d 818, 821 (Tex.Crim.App.1999).

 *The Length of the Delay.* The first factor, the length of the delay, is measured from the time the defendant is arrested or formally accused. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The length of the delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is *prima facie* unreasonable under the circumstances. *Doggett v. United States,* 505 U.S. 647, 651–652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. 2182. "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial exami-

nation of the claim." *Doggett v. United States,* 505 U.S. at 652, 112 S.Ct. 2686.

 In general, delay approaching one year is sufficient to trigger a speedy trial inquiry. *Id.* at 652 fn. 1, 112 S.Ct. 2686. Here, appellant was indicted in December 1997 and tried (the second time) in February 2001, an interval of 38 months. This delay was sufficient to trigger a speedy trial inquiry. Furthermore, the delay here stretched far beyond the minimum needed to trigger the inquiry. Consequently, this factor weighs heavily in favor of finding a violation of appellant's right to a speedy trial. *Dragoo v. State,* 96 S.W.3d at 314; *Zamorano v. State,* 84 S.W.3d 643, 649 (Tex.Crim.App.2002).

 *The Reason for the Delay.* When a court assesses the second factor, the reason(s) the State offers to justify the delay, different weights must be assigned to different reasons.[3] *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. 2182. Some reasons are valid and serve to justify the delay, while other reasons are not valid and do not serve to justify the delay. *Ibid.*

 Here, the State offered the trial court two reasons to justify the 38–month delay between appellant's indictment and second trial: appellant's motions for continuance and the crowded court docket. The State offered no evidence in support of its argument, but, given defense counsel's statements to the trial court regarding appellant's motions for continuance, the trial court could have reasonably concluded that appellant himself was responsible for several months of the delay. In addition, the three-month interval between appellant's indictment and first trial may not be counted against the State, since the State was entitled to a reason-

---

**3.** The State has the burden of justifying the delay. *Turner v. State,* 545 S.W.2d 133, 137–

138 (Tex.Crim.App.1976).

able period in which to prepare its case. On the other hand, a crowded court docket is not a valid reason for delay and must be counted against the State, although not heavily. *Ibid.*

In sum, the State did not justify most of the lengthy delay in this case. Consequently, this factor, too, weighs in favor of finding a violation of appellant's right to a speedy trial. *Dragoo v. State,* 96 S.W.3d at 314.

■■■■■ *The Defendant's Assertion of His Right.* Although a defendant's failure to seek a speedy trial does not amount to a waiver of the speedy trial right, failure to seek a speedy trial makes it difficult for a defendant to prevail on a speedy trial claim. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. 2182. This is so because a defendant's failure to make a timely demand for a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not having one. *Dragoo v. State,* 96 S.W.3d at 314. Furthermore, the longer the delay becomes, the more likely it is that a defendant who really wanted a speedy trial would take some action to obtain one. *Ibid.* Thus, a defendant's inaction weighs more heavily against a violation the longer the delay becomes. *Ibid.*

Here, appellant failed to assert his speedy trial right until 29 months after his first trial, and he did not seek a hearing on his motion to dismiss until almost six months after that, although he was represented by counsel at all relevant times and no question is raised as to the competency of counsel. In view of the lengthy delay here, during most of which appellant quietly acquiesced, this factor weighs very heavily against finding a violation of his right to a speedy trial. *Id.* at 315.

■■■■■ *Prejudice to the Defendant Resulting From the Delay.* When a court assesses the final factor, prejudice to the defendant, it must do so in light of the interests which the speedy trial right was intended to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the defendant's anxiety and concern; and (3) to limit the possibility that the defendant's defense will be impaired. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. 2182. Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Ibid.* Furthermore, with respect to the third interest, relating to the defendant's ability to defend himself, affirmative proof of prejudice is not essential to every speedy trial claim, because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *Doggett v. United States,* 505 U.S. at 655, 112 S.Ct. 2686. On the other hand, this presumption of prejudice to the defendant's ability to defend himself is "extenuated ... by the defendant's acquiescence" in the delay. *Id.* at 658, 112 S.Ct. 2686.

Here, appellant was out on bond at all relevant times, so we need not concern ourselves with pretrial incarceration. And, with respect to the second interest, appellant offered no evidence to the trial court that the delay had caused him any unusual anxiety or concern, *i.e.,* any anxiety or concern beyond the level normally associated with being charged with a felony sexual crime. Finally, with respect to the third interest, we must presume that the lengthy delay here did adversely affect appellant's ability to defend himself, but this presumption is extenuated by appellant's longtime acquiescence in the delay. See *Dragoo v. State,* 96 S.W.3d at 315.

■■■ In short, on this record, the trial court could have reasonably concluded that appellant failed to demonstrate any actual

prejudice. Therefore, this factor weighs against finding a violation of his right to a speedy trial.

■ Having addressed the four relevant factors, we must now balance them. Weighing in favor of finding a violation of appellant's right to a speedy trial are the facts that the delay here was excessive and that the State offered no valid reason for most of the delay. Weighing against finding a violation of appellant's right to a speedy trial are the facts that he failed to assert his right until 29 months after his first trial, that he waited another six months before seeking a hearing to enforce that right, and, finally, that he failed to demonstrate any prejudice. We hold that the weight of the four factors, balanced together, is against finding a violation of appellant's right to a speedy trial. See *Barker v. Wingo*, 407 U.S. at 534, 92 S.Ct. 2182 (where defendant was not seriously prejudiced by five-year delay between arrest and trial and he did not really want a speedy trial, his right to a speedy trial was not violated); *Dragoo v. State*, 96 S.W.3d 308 (where defendant demonstrated no serious prejudice by 3½ year delay between arrest and trial and he waited until just before trial to assert his right to a speedy trial, his right to a speedy trial was not violated); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex.Crim.App.1982) (where defendant demonstrated no prejudice by four-year delay between arrest and trial and he waited until one month before trial to assert his right to a speedy trial, his right to a speedy trial was not violated).

We reverse the judgment of the court of appeals and remand the case to that court so that it may address appellant's remaining points of error.