NO. 07-09-0051-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 30, 2009
_____

DAVID JOHN MADRID, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 50,763-B; HONORABLE RICHARD DAMBOLD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

_____**MEMORANDUM OPINION**


Appellant, David John Madrid, appeals his conviction for possession with intent to deliver a controlled substance, methamphetamine, in an amount greater than four grams but less than 200 grams and sentence of 25 years incarceration in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ).[1] Appellant contends the trial court erred in failing to grant his motion to dismiss and by making an affirmative deadly weapon finding. We affirm.

---

[1]See TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon Supp. 2009).

Background

The Amarillo Police Department executed a search warrant of appellant's home on January 14, 2005. During the search, the police found various unloaded weapons, ammunition, and packages of controlled substances in the home. Appellant was arrested and charged with possession of a controlled substance in an amount greater than four grams but less than 200 grams. Appellant was appointed counsel on January 26th. On January 31st, appellant retained his own counsel and the court allowed the appointed counsel to withdraw. On February 3, appellant was released on bond. On March 22, the trial court allowed retained counsel to withdraw. On April 27, 2005, appellant was indicted; additionally, the indictment gave notice of the State's intent to seek a deadly weapon finding. On May 9, the trial court, once again, appointed counsel to assist appellant.

On July 6, 2005, appellant was indicted in federal court for the offense of felon in possession of a firearm.[2] On September 5, 2005, appellant pled guilty to the federal offense and was sentenced to 42 months imprisonment. On September 9, the surety filed a motion to surrender appellant into the custody of Potter County due to appellant having pled in the federal case and being detained in Randall County on a federal hold. Based on the surety's motion, a warrant was issued for appellant's arrest which stayed outstanding during appellant's 42 month imprisonment.

---

[2] The federal charge arose from weapons discovered in appellant's home during the execution of a previous search warrant on November 18, 2004.

On September 3, 2008, appellant retained new counsel who filed a motion for substitution of counsel as well as a motion for bond upon appellant's release from federal custody. Both motions were granted. On October 16, appellant filed a motion to dismiss for lack of speedy trial. On October 28, the trial court held a hearing on the motion to dismiss and denied the motion to dismiss. On January 12, 2009, the trial court held a second pretrial hearing to hear appellant's motion to quash the indictment that alleged that the State failed to identify the deadly weapon with sufficient specificity. After argument, the trial court ruled that the indictment provided sufficient information to give appellant notice of the State's request for an affirmative deadly weapon finding. After receiving the rulings from the court, appellant pled guilty and was sentenced to 25 years incarceration in ID-TDCJ. We affirm.

Right to a speedy trial

In determining whether a defendant has been denied his federal or state constitutional right to a speedy trial, a court must balance the conduct of the State and the defendant. See Shaw v. State, 117 S.W.3d 883, 888 (Tex.Crim.App. 2003). The factors to be weighed in the balance include, but are not limited to: 1) length of the delay, 2) reason for the delay, 3) defendant's assertion of his speedy trial right, and 4) the prejudice to the defendant resulting from the delay. See id. at 888-89.

In its order, the trial court found that 1) there had been a delay of 45 months, 2) the delay was primarily due to appellant's federal incarceration, 3) appellant failed to assert his

right to a speedy trial and the decision not to assert his right was a deliberate and willful trial tactic, and 4) appellant suffered no prejudice as a result of the delay.

A delay approaching a year is sufficient to trigger a speedy trial inquiry. See id. at 889. A delay beyond the minimum needed to trigger an inquiry weighs heavily in favor of finding a violation. Id. In this case, appellant's case was delayed for 45 months with 42 months of that delay being concurrent with appellant's federal incarceration. In simply considering the length of the delay, the delay of 45 months will weigh heavily in favor of finding a violation of appellant's right to a speedy trial.

Next, we consider the reason for the delay. At the hearing on the motion to dismiss, the trial court heard conflicting testimony as to the reason for the delay. Appellant testified that he attempted to contact his attorney, through his family, in order to take action upon the pending case. Further, appellant directs the appellate court to the fact that the State admitted to failing to take action to resolve this case, even though it was aware of appellant's whereabouts. In contrast, the State presented testimony of a former prosecutor assigned the case at its inception. The prosecutor testified to speaking to appellant's counsel and offering a plea agreement that was rejected by counsel. Further, the prosecutor testified that it was her recollection that counsel had stated a strategy of waiting until appellant had completed his federal incarceration to resume action on the instant case. Although different reasons given to justify the delay should be weighed accordingly, the State has the burden of justifying the delay. Id. at 889 n.3. Even assuming, *arguendo*, that appellant's counsel stated a desire to have the case delayed, it does not explain nor does the State offer an explanation as to why the State did not seek to have the case

4

called for trial. Although the prosecutor's testimony mentions the difficulty of gaining access to persons in federal custody for the purpose of resolving state criminal charges, the prosecutor did not state that this was the reason for the delay. Neither does the prosecutor state that she made the decision to delay the proceeding because appellant was serving time for federal charges. Therefore, this court, without a valid reason for the delay, may not presume a deliberate attempt on part of the State to prejudice appellant nor a valid reason for the delay. See Dragoo v. State, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003). Hence, this factor weighs in favor of finding a violation of appellant's right to a speedy trial, but not heavily. See Shaw, 117 S.W.3d at 889-90. See also Rodriquez v. State, 227 S.W.3d 842, 844 (Tex.App.–Amarillo 2007, no pet.).

Next, we review appellant's assertion of his right to a speedy trial. Although appellant's failure to seek a speedy trial does not constitute a waiver of the right to a speedy trial, failure to seek a speedy trial makes it difficult for appellant to prevail on his claim. See Shaw, 117 S.W.3d at 890. In this case, appellant contends that he desired a speedy trial and made efforts to speak with his attorney to resolve this case. However, nothing was presented to the trial court nor to the State formally declaring his desire during appellant's federal incarceration. Even if appellant was unsuccessful in contacting his appointed attorney, appellant could have sent notice to the trial court that appointed counsel was being unresponsive. The first time that appellant formally asserted his right to a speedy trial was in October of 2008, which prompted a hearing before the trial court within two weeks. Although we are cognizant of appellant's contention that he attempted to take action through his attorney, neither the State or the trial court were informed of his

5

desire to move the case forward either formally or informally. The longer the delay becomes, the more likely it is that a defendant who really wanted a speedy trial would have taken some action to obtain one. Shaw, 117 S.W.3d at 890. We conclude that this factor weighs very heavily against finding a violation of his right to a speedy trial. Id.

Finally, we consider the prejudice to appellant resulting from the delay. Although, appellant raised the issue of the difficulty in finding two witnesses, it does not appear from the record that any prejudice to appellant's case arose from the delay. The first witness's whereabouts were unknown at the time of the hearing in October 2008; however, the witness's whereabouts were unknown at the time of appellant's arrest on the charge. The difficulty in finding the second witness appeared to arise from the lack of identification of the witness. Although appellant contends that the witness's name was forgotten because of the passage of time, the presumption of prejudice to appellant's ability to defend himself is extenuated by appellant's acquiescence and failure to assert his right to a speedy trial. Id.; Rodriquez, 227 S.W.3d at 844. Since appellant was incarcerated for his federal charge during 42 months of the 45 month delay, any prejudice caused by pretrial incarceration is minimal.[3] Shaw, 117 S.W.3d at 890. Finally, appellant offered no evidence that the delay caused him any unusual anxiety or concern beyond that normally associated with being charged with a felony offense. Id. Hence, we conclude that this factor weighs against finding a violation of appellant's right to a speedy trial.

---

[3] Additionally, appellant was out on bond during a majority of the three months that he was not in federal custody.

6

Having reviewed all four factors and balancing their effect on appellant's right to a speedy trial, we especially consider the trial court's denial of the motion to dismiss based on the finding that defendant failed to assert his right to a speedy trial as a "deliberate and willful trial tactic." We cannot say that the decision rendered on the matter lacked evidentiary support or failed to comport with the law. Rodriquez, 227 S.W.3d at 845. We overrule appellant's first issue.

Affirmative finding of a deadly weapon

After the trial court ruled against appellant on his motion to dismiss, appellant proceeded on his motion to quash the indictment for failure to specify an offense. Appellant contends that the State did not specify which of the various guns found within the home allegedly was used in the crime for which appellant was charged, which was possession with intent to deliver a controlled substance, namely methamphetamine. After the trial court denied appellant's motion to quash the indictment, appellant next contended that, since the State failed to show that any of the weapons were found in close proximity to appellant and because the weapons were collector's items, the evidence was legally insufficient to sustain a finding of the use of a deadly weapon.

When reviewing evidence for legal sufficiency, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found that the weapon was used or exhibited as a deadly weapon. See Cates v. State, 102 S.W.3d 735, 738 (Tex.Crim.App. 2003). In determining whether a weapon was "used" as a deadly weapon in furtherance of the possession or delivery of a controlled substance,

7

we considered the following factors:  1) the type of gun involved; 2) whether or not the gun was loaded; 3) whether or not the gun was stolen; 4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; 5) the accessibility of the gun to whomever controlled the premises; 6) the quantity of drugs involved; and 7) any evidence that might demonstrate an alternative purpose for the presence of the guns. See Coleman v. State, 145 S.W.3d 649, 658-60 (Tex.Crim.App. 2004) (Cochran, J. concurring); Bahr v. State, No. 07-07-0328-CR, 2009 WL 2431490, at *5 (Tex.App.–Amarillo Aug. 10, 2009, no pet. h.).

In this particular case, the guns involved were a Rossi .38 firearm found within reach of appellant, a .22 caliber revolver pistol and ammunition found in a safe accessible by appellant, a .22 caliber semiautomatic rifle located in the room where appellant was found, and a SKS assault rifle found in an adjoining bedroom.  The type of rifles found are not uncommon weapons among those in the drug trade. Coleman, 145 S.W.3d at 659 n.14. Additionally, handguns which are easily concealed are also tools of the trade. Id.  Next, we note that, although none of the weapons were loaded, ammunition was found in the safe alongside the pistol.  The SKS assault rifle appeared to be in new condition and was located in a wooden box with packing grease on the bolt.  For the next factor, there is no indication that the guns were stolen; however, the law enforcement officers testified to searching registration records without any success.  For the next two factors, only the Rossi .38 firearm was found near drug paraphernalia.  As for accessibility, the Rossi .38 firearm was within reach and the .22 caliber semiautomatic rifle, although hidden, was easily accessible to persons aware of its location. Id. at 659 n.18.  As for the quantity of

8

drugs present, the amount of drugs throughout the residence was over 77 grams of methamphetamine. As for the last factor, there was no direct evidence explaining the presence of the weapons. However, the State presented evidence that law enforcement had executed a search warrant on the home in November and had removed all of the firearms from the premises. Law enforcement also testified that the SKS assault rifle had a bayonet and was not a hunting rifle.

Notwithstanding the fact that the weapons were unloaded at the time of the search warrant, the lack of evidence of an alternative explanation for the presence of the numerous weapons, that the type of weapons found are typically associated with the drug trade, and the ease of access to at least some of the weapons, we conclude that the evidence was legally sufficient to support an affirmative finding of the use of a deadly weapon during the commission of the offense. Taking into consideration all of the factors and viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that a weapon was used or exhibited as a deadly weapon. See Cates, 102 S.W.3d at 738. We overrule appellant's second issue.

Conclusion

For the foregoing reasons, we affirm.


Mackey K. Hancock
Justice

Do not publish.