# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00817-CR

---

**Michaiah Sample, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 167TH DISTRICT COURT OF TRAVIS COUNTY,
NO. D-1-DC-15-600084, THE HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING**

---

## O P I N I O N

The jury found Appellant Michaiah Sample guilty of indecency with a child by contact. Tex. Pen. Code § 21.11(a)(1). The jury assessed sentence at seven years in prison and recommended that the court suspend the sentence and place Sample on community supervision. The trial court imposed but suspended the seven-year sentence and imposed a seven-year term of community supervision. Sample asserts that the trial court erred in denying his motion to dismiss the prosecution on speedy-trial grounds. We will affirm.

## BACKGROUND

According to the parties' stipulated timeline, Appellant was arrested on July 15, 2015. He was accused of digitally penetrating his friend's fifteen-year-old daughter while she slept. The girl awoke during the act, and Appellant fled and was apprehended. The girl's examination, Appellant's buccal swab, and other physical evidence was submitted to the Department of Public Safety laboratory. Appellant was released from jail on August 12, 2015,

and hired counsel. Appellant was indicted for indecency with a child on September 1, 2015. On November 11, 2016, the Department of Public Safety laboratory produced a DNA report that was negative for Appellant's DNA. Appellant's counsel also requested the background information on the testing; the report was provided to the defense on February 8, 2017. Appellant hired DNA experts who provided a ten-page report on the DNA testing on August 17, 2017.

On August 20, 2015, Appellant was arrested for a June 2015 sexual assault of an adult; he was released from jail on August 28, 2015. He was not indicted for that offense until June 19, 2017. An assistant district attorney testified that the delay in the indictment in that case was due in part to a delay in obtaining DNA results in that case.[1] The DNA report in the adult case was also exculpatory.

Appellant was arraigned in both cases on October 22, 2018. Appellant was represented by one attorney (original counsel)[2] from 2015 through October when new counsel moved to substitute on October 26, 2018, and replaced original counsel when the court granted the motion on October 31, 2018.

New counsel filed a motion to dismiss both cases on speedy-trial grounds on November 13, 2018, and filed an amended motion to dismiss on December 14, 2018. Appellant did not request a speedy trial but requested dismissal for the denial of one. The court heard testimony on the motions on January 10, 2019, and February 11, 2019. On the record in the second hearing, the trial court observed that the delay could be sufficient to support dismissal of

---

[1] Witnesses testified that DNA laboratories paused testing while changing analysis methods, and delays were exacerbated by the Austin Police Department lab closing permanently in 2016.

[2] Appellant may have been briefly represented by another attorney before original counsel, but that attorney's acts or omissions are not relevant to the claims here.

the adult charge, and the State asserts without contradiction that it was thereafter dismissed. The trial court stated that there was evidence to support the finding that Appellant suffered anxiety, depression, loss of income, and other prejudice as a result of the delay. The court also assumed that the passage of time caused Appellant harm in the difficulty in finding witnesses. The trial court nevertheless denied the motion to dismiss this case in part because Appellant did not first request a trial; the trial court found that Appellant's original counsel sought a favorable plea bargain, not a trial. He concluded that Appellant acquiesced in and sought delay in this case as a strategic matter. The trial court signed an order denying the motion to dismiss this indecency with a child charge without specific findings on March 20, 2019.

The guilt/innocence phase of the trial in this cause began September 30, 2019, and concluded October 3, 2019. The punishment phase followed on October 7, 2019, and sentencing occurred on November 8, 2019.

## APPLICABLE LAW

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The right attaches once a person is either arrested or formally charged. *Id.* The speedy-trial right is amorphous, slippery, and necessarily relative, and no set amount of time is too long. *State v. Davis*, 549 S.W.3d 688, 697 (Tex. App.—Austin 2017, no pet.) (citing *Hopper v. State*, 520 S.W.3d 915, 923-24 (Tex. Crim. App. 2017) ); *see also Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013). In assessing speedy-trial claims, courts balance factors including, but not necessarily limited to: (1) length of the delay, (2) reason for the delay, (3) assertion of the

right, and (4) prejudice to the accused. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *Davis*, 549 S.W.3d at 697; (both citing test in *Barker v. Wingo* 407 U.S. 514, 530 (1972)).

No single factor is necessary or sufficient to establish a violation of the right to speedy trial. *Dragoo*, 96 S.W.3d at 314 (citing *Barker*, 407 U.S. at 533). Instead, the four factors are related and must be considered together along with other relevant circumstances. *Cantu*, 253 S.W.3d at 281. We must apply the balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Id*. The length of the delay is in part a triggering mechanism and, if sufficiently unreasonable on its face, becomes one factor among several. *Dragoo*, 96 S.W.3d at 313 (citing *Doggett v. U.S.*, 505 U.S. 647, 652 (1992)). More serious and complex crimes can sustain a longer wait for a trial. *Davis*, 549 S.W.3d at 697.

The State has the burden of justifying the length of the delay, and defendants must prove that they asserted the right and suffered prejudice as a result of the delay. *Id*. In some cases, filing for a dismissal, instead of asking for a speedy trial, will weaken a speedy trial claim because it shows a desire to not go to trial at all. *Cantu*, 253 S.W.3d at 283. If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure. *Id.* However, "the defendant has no duty to bring himself to trial; that is the State's duty." *Zamorano v. State*, 84 S.W.3d 643, 651 (Tex. Crim. App. 2002) (citing *Barker*, 407 U.S. at 527).

A lengthy delay reduces defendants' burden to show prejudice but increases their burden to show that they timely asserted the right. *See Dragoo*, 96 S.W.3d at 314 (inaction weighs more heavily against violation as delay lengthens); *Zamorano*, 84 S.W.3d at 649 (presumption that pretrial delay prejudiced accused intensifies over time). A party who fails to

4

demand a speedy trial does not waive the right, and courts can weigh a defendant's knowing choice not to object to the failure to set a trial date differently from defendants whose attorneys acquiesce in long delays without adequately informing the defendant. *Barker*, 407 U.S. at 528-29. Reviewing courts must assess prejudice in light of the interests the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* at 532. Evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation. *Cantu*, 253 S.W.3d at 286.

We review a trial court's ruling on a speedy-trial claim with a two-phase standard: we review factual components for an abuse of discretion and legal components de novo. *Id.* at 282. Review of the four factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question. *Id.* An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court when it ruled. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (citing *Dragoo*, 96 S.W.3d at 313). We defer to a trial court's resolution of disputed facts and reasonable inferences from those facts. *Cantu*, 253 S.W.3d at 282. We view the evidence in the light most favorable to the trial court's ultimate ruling. *Id.*

## DISCUSSION

Appellant contends that the trial court erred in denying his motion to dismiss the prosecution on speedy-trial grounds. He contends that the delay was substantial, unjustified, and

prejudicial. He argues that his original counsel's strategic decision not to assert his speedy-trial right should not be held against him because the attorney did not inform Appellant of that right. The State focuses on the Appellant's strategic acquiescence in the delay to obtain information and avoid trial and his failure to request a trial date even with new counsel. The State also argues that Appellant did not show prejudice through an impaired ability to defend himself.

The trial court did not make written findings of fact to accompany its order denying the motion to dismiss but stated at the hearing that, although Appellant suffered some harm from the delay, the crux of the issue in this case was the lack of assertion of the right to speedy trial and acquiescence in the delay. To forestall the need to call an investigator, the trial court said it presumed some harm in the difficulty in locating a witness. The court stated that Appellant never asserted his right as a strategy to obtain a more favorable plea bargain rather than a trial. The trial court denied Appellant's motion to dismiss this cause.

### 1. Length of Delay

The delay is measured from the date of arrest or the filing of the information, whichever occurs first, to the date of trial. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Hunt v. State*, 237 S.W.3d 434, 436 (Tex. App.—Waco 2007, pet. ref'd). In general, delay approaching one year is sufficient to trigger a speedy trial inquiry. *Doggett*, 505 U.S. at 652 n.1. Here, Appellant was arrested on July 15, 2015, indicted on September 1, 2015, arraigned October 23, 2018, and filed his motion to dismiss on November 13, 2018. The trial court denied the motion on March 20, 2019. The actual trial date was not a factor in the trial court's decision because it occurred after the decision on this motion to dismiss. When Appellant filed his motion to dismiss, almost forty months had passed since he was arrested—

well more than the one year that triggers a speedy-trial inquiry. The trial court concluded, and we agree, that this factor weighs in Appellant's favor.

## 2. Reason for Delay

The reasons given for the delay were chiefly the delays caused by the challenges in the DNA testing laboratories and the strategies of original counsel. These factors left original counsel uncomfortable with pushing for a trial or plea bargain without full discovery, which left the prosecutors not willing to set the case for arraignment without the defendant's agreement.

Original counsel testified that DNA lab results usually came in about six months. The Austin Police Department (APD) detective submitted the victim's DNA sample and questionnaire in July 2015 and Appellant's buccal swab from this case in August 2015. An assistant district attorney testified that DNA labs paused their testing in 2016 because a different theory of assessing mixtures required recalibration and validation of equipment and software. This delay was compounded by an audit and shutdown of the APD lab in June 2016 that caused the Travis County district attorney to redirect its samples to the Department of Public Safety (DPS) laboratory. In turn, the DPS laboratory soon discovered that it could not process all of the Travis County samples and decided to simply store them until Travis County requested that they be sent elsewhere for testing; the APD detective testified that he was told that DPS was testing rape kits but not buccal swabs or garments. The assistant district attorney handling the adult victim's case testified that she did not learn of that shift in the DPS lab's intention until January 2018, then had to request that the samples be moved to a private lab for testing. The adult DNA test results came back in June 2018 and were uploaded into the DA's system in August 2018; the test background information arrived after the motion to dismiss was filed in November 2018.

The effect of the backup in DNA testing was compounded in this case by original defense counsel's desire to postpone trial until he received not only the DNA test results but the information about the methods of testing in this case and in the adult case. Counsel linked the two cases because he believed that the adult case could be used as evidence in the punishment phase of the child case. Counsel testified that he recognized that having a pending indictment was stressful, but that his general philosophy was that "if you haven't been to trial you haven't been convicted."[3] More specifically, counsel said he did not want to go to trial without having all of the discovery including the full DNA testing information in both the child and the adult cases. He also testified that he had trouble communicating the urgency of his need for the DNA testing information because new prosecutors kept coming onto the case.

Prosecutors made a few offers for a plea bargain, but original defense counsel testified that he did not believe that he could seriously negotiate without the full DNA testing information in both cases. Defense counsel did not make a counteroffer. His DNA experts asked for additional information regarding testing that arrived a year after he requested it and after he had been replaced as defense counsel and new counsel filed the motion to dismiss.

The main reason for the delay seems to have been problems in the DNA testing system, which is the type of problem that weighs against the State but not heavily. *See Fuller v. State*, 624 S.W.3d 855, 864 (Tex. App.—Fort Worth 2021, pet. ref'd) (op. on reh'g) (three-year delay in DNA testing when requested by State in murder case more like negligence than deliberate conduct; it weighs against State but not heavily).

---

[3] The Court of Criminal Appeals said more pithily, "[T]he failure to diligently seek a speedy trial supports the hoary lawyer's adage, 'Never tried, never convicted.'" *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008).

### 3.   Assertion of the right

Appellant did not request a trial date or demand a speedy trial; original counsel did not assert the right, and substituted counsel filed a motion to dismiss rather than demand a trial date. Appellant's mother testified that original counsel did not discuss speedy-trial rights except in the context of proposing to file a motion demanding evidence favorable to Appellant on grounds that delay in providing that evidence could deprive Appellant of his right to a speedy trial. She testified that Appellant just wanted the case to be over, but there is no testimony that he told his original counsel that desire; when the State asked original counsel whether Appellant told him of that desire, Appellant's new counsel objected, asserting attorney-client privilege, and the trial court sustained the objection. Appellant contends that he was justified in not demanding a trial date because the State failed to provide full background information on the DNA tests. The test results in the adult case did not arrive until June 2018, and the background information arrived after that. Appellant sought a plea deal that would not require him to register as a sex offender.

Appellant did not assert his right to a speedy trial. His original counsel did not assert the right as a strategic move because he wanted full DNA testing information before negotiating a plea deal, and his new counsel sought to dismiss the case rather than obtain a trial. This factor weighs somewhat against Appellant.

### 4.   Prejudice caused by the delay

The showing of prejudice under the *Barker* factors is mixed. *See* 407 U.S. at 532. The delay in trial had not led to excessive incarceration when the motion was heard as Appellant

spent twenty-eight days in jail before gaining release on bond in this case in August 2015; his subsequent arrest for the adult case led to an eight-day jail stay.

Appellant showed that he experienced anxiety and other ills while waiting for trial. His mother testified that he went from being a carefree individual to a depressed one who drank heavily, stopped eating, lost weight, dropped out of school, and began to experience back pain and urinary problems. He lost out on a job opportunity because of his pending felonies. He was vilified as a rapist on social media, had bricks thrown at him outside of a barbershop, and was told to leave a Goodwill store because of his status. His mother said he just wanted the case over with. But, other than showing that Appellant wanted the case to be finished, the evidence did not tie these harms to the delay rather than the nature of the charges against him. *See Cantu*, 253 S.W.3d at 286. Even if a speedier trial had shortened the time the indecency charge was merely pending, it would not have avoided all of the negative effects to Appellant of being charged with indecency with a child and sexual assault of an adult.

Perhaps most critically, Appellant did not show that his ability to defend himself was hampered and does not argue on appeal that it was hampered. *See Balderas v. State*, 517 S.W.3d 756, 772 (Tex. Crim. App. 2016) (noting that of three considerations in prejudice determination, "the most important" is "limiting the possibility that the defense will be impaired"). At the hearing, there was testimony about witnesses who would be necessary but might be hard to locate; however, the DA's investigator had located one of the witnesses within a day of being asked to find her.

Appellant did not show that the delay itself caused him significant prejudice.

**5.     Conclusion**

Having reviewed the record in the light most favorable to the trial court's findings, we cannot say that the trial court erred by balancing all of this evidence and denying the motion to dismiss.

On this record, we conclude that the trial court did not err by denying the motion to dismiss because Appellant was not denied his Sixth Amendment right to a speedy trial. We resolve Appellant's sole issue on appeal against him and affirm the judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed:   May 25, 2022

Publish