# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00771-CR

---

**Bobbi Battishia White, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 76730, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Bobbi Battishia White challenges her conviction for aggravated kidnapping. In her sole issue, she contends that the trial court erred when it denied her motion to dismiss for violation of her speedy trial right. We affirm the judgment of conviction.

## BACKGROUND

The State presented evidence at trial that on November 12, 2016, White and her two co-defendants—her husband Tutankhamun Holt and Derrick Lamont Bailey, Jr.—worked together to kidnap White's minor daughter who was in the custody of White's ex-husband at the time. White and her ex-husband were involved in a custody dispute and White had supervised visitation rights at the time. While White's ex-husband and daughter exited a movie theater, Holt assaulted White's ex-husband in the parking lot while White abducted her daughter and put her in a car where Bailey, the getaway driver, was waiting for them. Holt stopped his attack on

White's ex-husband and entered the getaway car. White's ex-husband attempted to stop them from leaving but stopped when Bailey pulled a gun on him. White and her co-defendants fled to Alabama with White's daughter. The next day, November 13, 2016, police officers and FBI agents located and recovered White's daughter. White and her co-defendants were arrested the same day.

On February 1, 2017, White was charged by indictment with aggravated kidnapping and extradited from Alabama to Texas. White was appointed counsel on March 15, 2017. The State moved for joinder of the three co-defendants' cases, which was granted by the trial court on July 13, 2017. On July 26, 2017, White filed a pro se motion to dismiss her appointed counsel, which included her statement that "[a] jury [trial] has been scheduled for Defendant without her consent for Aug 28, 2017." In late July, several subpoenas were issued for trial witnesses, and the State filed pre-trial notices.

On August 14, 2017, the trial court granted severance of the co-defendants' cases on the motion of one of White's co-defendants. White's trial counsel confirmed that he was in agreement with severing the cases. Her counsel requested a continuance, which was granted, and a pretrial hearing was scheduled for September 28, 2017.

On September 25, 2017, White filed a pro se "Motion for Fair Defense," in which she complained of alleged failures of her counsel and requested that the trial court appoint her different counsel. On September 28, 2017, White's counsel filed a motion to withdraw.

On October 2, 2017, the trial court granted the motion to withdraw and appointed White her second trial counsel. On February 25, 2019, White filed a pro se letter that requested that an attached letter addressed to her attorney be included in her file. The letter to her attorney, which was dated February 20, 2019, requested that five specific pre-trial motions be made on her

2

behalf, including a motion for speedy trial. On March 7, 2019, White filed a pro se motion to have her attorney removed based on his failure to file the requested pretrial motions on her behalf. While still represented by counsel, White filed a pro se speedy trial motion on March 26, 2019, a request for a hearing on that motion on April 18, 2019, and again on May 13, 2019. The trial court did not rule on her pro se requests for a speedy trial.

On May 23, 2019, White's counsel moved to withdraw, explaining that White had continued to file pro se motions after being told by counsel that all motions should go through him, that hybrid representation was "not workable," and that he believed she either wanted to represent herself or to hire different counsel. However, during the hearing on the motion, White responded, "No, sir," when asked if she wanted her attorney to withdraw. The trial court denied counsel's motion to withdraw and instructed White that she did not have a right to file any motions while she was represented by counsel. On June 5, 2019, White filed another pro se speedy trial motion. On June 20, 2019, the State filed a witness list. On June 25th, White's trial was set for August 1, 2019. Also on June 25th, White's counsel filed his second motion to withdraw stating that a conflict of interest had developed and that although "White indicated last month that she wanted [] counsel to remain as her counsel, her actions and pro se filings say otherwise." During the hearing held that same day, counsel explained that White was continuing to file pro se motions, that he believed her pro se motions were provided by a co-defendant, that she was claiming he was ineffective, and that he thought she wanted to represent herself. The trial court granted the motion to withdraw. The trial court confirmed with White that she did not want to represent herself and then appointed her third trial counsel.

In late June, the State issued another set of subpoenas. On July 1, 2019, White filed a "Memorandum for the Record," in which she stated, "I do not agree to any continuance in

[this] case" and she was "not seeking anymore delays." On August 1, 2019, a pretrial hearing was set for September 26, 2019. In early August, the State issued additional subpoenas. The day before the scheduled pretrial hearing, White, through her attorney, agreed to a continuance to allow additional time to review the "extensive discovery." The pretrial hearing was reset for October 17, 2019. However, two days before the hearing, White, through counsel, agreed to another continuance because counsel was going to be in England for a "family legal issue" and was "still reviewing discovery." Pretrial was reset for November 14, 2019. On November 14th, a jury trial was set for March 30, 2020. In mid-March, the State again filed a witness list and issued subpoenas. On March 24, 2020, the jury trial was rescheduled for August 10, 2020.

Prior to the scheduled trial date, White retained new counsel who filed a motion to substitute on July 1, 2020. One week later, the court granted the motion and scheduled a pretrial hearing for August 13, 2020. On August 14, 2020, the court scheduled a jury trial for January 11, 2021. On December 14, 2020, the court rescheduled the jury trial for April 5, 2021.

On March 10, 2021, White filed a motion to dismiss for violation of her speedy trial right through her attorney. The same day, the trial court signed an order setting a hearing date for the motion. On April 5, 2021, the trial court held a hearing on White's motion. The trial court took judicial notice of the court's file.

White's first witness, her sister Jennifer White (Jennifer) testified that White had been continuously in jail since November 2016. She also testified that prior to White's arrest, the family—which included White's daughter, White, Jennifer, and their mother—was very close but that the relationships had become strained. She explained that their mother supported White when she was first incarcerated but that the length of incarceration had been too stressful on their mother and that their mother would not attend trial to testify on White's behalf or to

otherwise support her. Jennifer also testified that White has multiple sclerosis (MS), which is life threatening, and that White needs to take medication to control it.

White's second witness, Sarah Howell, was her former cellmate in the county jail in 2018. Howell testified that White's condition had worsened during the time she knew her. Specifically, Howell explained that when she first met White, she could exercise but that later due to not consistently being given the right medication and after falling down the stairs, White was barely able to get out of bed and was in constant pain. She also testified that White had become depressed and had lost her sense of self while in prison. On cross-examination, Howell admitted that she had a conviction for making a false report to a police officer and that she had no personal knowledge of White's condition prior to her being in jail.

White's third witness was Jeremy Daniel, the father of White's codefendant and husband Holt. Daniel testified that he had known White for about eight years, that she had been consistently in custody since her arrest in November 2016, that she had MS symptoms as long as he had known her, and that her health had deteriorated while she was in jail because she was having trouble getting her medication.

The State did not present additional evidence beyond the court's file. The trial court heard closing arguments.

White argued that the nearly four-and-a-half-year delay was not justified and pointed out that her co-defendants had already had trials. She also argued that including her pro se motions, the motion to dismiss was her third request for a speedy trial. She argued that the delay had caused her prejudice based on her deteriorating health and argued that she had lost her mother's support as a character witness due to the delay.

5

The State argued that White was at fault for the delay by repeatedly replacing her attorneys, which it argued necessitated continuances for the new attorneys to review discovery, prepare for trial, and engage in plea negotiations. The State also noted that part of the delay fell during the COVID-19 pandemic, at which time there were no jury trials. The State argued that it had always been ready for trial and explained that it had attempted to try the cases together to expedite the process. The State argued that White had not shown prejudice to her criminal case and categorized the speedy-trial hearing as a "glorified bond hearing."

The trial court denied White's motion to dismiss. Her trial began on August 15, 2022. After hearing all the evidence presented, the jury found her guilty as charged, and the trial court assessed punishment at twenty-five years' imprisonment. The trial court ordered that she receive jail-time credit towards her sentence for the time she had been in prison since her arrest. White appealed.

**STANDARD OF REVIEW**

To determine whether a defendant was denied a speedy trial, we conduct the *Barker v. Wingo* balancing test, in which we balance a non-exhaustive list of four factors: (1) the length of the delay, (2) the reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Shaw v. State*, 117 S.W.3d 883, 888–89 (Tex. Crim. App. 2003) (quoting *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972)). This balancing test requires that we weigh the conduct of the State and the defendant based on the arguments, information, and evidence before the trial court at the time it made its ruling, and no single factor is necessary or sufficient to find that a speedy-trial violation has occurred. *Id.* The State has the burden of justifying the length of the

6

delay, and the accused has the burden of proving that she asserted the right and that she suffered prejudice because of the delay. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

"We apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a *de novo* standard for the legal components." *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). Thus, we review all evidence in the light most favorable to the trial court's ultimate ruling, and we conduct the balancing test, which is a legal question, de novo. *See Cantu*, 253 S.W.3d at 282.

## DISCUSSION

*Length of Delay*

The first factor, the length of delay, acts as a "triggering mechanism," in which we only consider the other three *Barker* factors if the delay "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Lopez*, 631 S.W.3d at 114 (quoting *Doggett v. U.S.*, 505 U.S. 647, 651-52 (1992)). Although what constitutes a presumptively prejudicial delay depends on the circumstances of each case, generally, "a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis." *Id.* We measure the starting point of the delay from either the arrest or indictment, which ever occurred earlier. *Laird v. State*, 691 S.W.3d 30, 38 (Tex. App.—Austin 2023, pet. ref'd) (citing *Shaw*, 117 S.W.3d at 889). "'Presumptive prejudice' is simply the burden to trigger a full inquiry; it 'does not necessarily indicate a statistical probability of prejudice.'" *Id.* (quoting *Doggett*, 505 U.S. at 652 n.1).

Here, White was arrested on November 13, 2016. Thus, when the trial court considered White's motion to dismiss on April 5, 2021, the delay had been nearly four years and

five months. *See State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (calculating delay from arrest to speedy trial hearing). This is more than enough time to trigger the full *Barker v. Wingo* analysis. *See Shaw*, 117 S.W.3d at 889 (explaining that "delay approaching one year is sufficient to trigger a speedy trial inquiry"). Further, "[b]ecause the delay stretched far beyond the minimum needed to trigger the additional inquiry, this factor weighs heavily in favor of finding a speedy-trial-right violation." *Laird*, 691 S.W.3d at 38; *see also Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (concluding that three-and-a-half-year delay weighed heavily in favor of finding speedy trial violation).

*Reason for Delay*

We next evaluate the State's justification for the delay. *See Cantu*, 253 S.W.3d at 280. A deliberate delay by the State weighs heavily against it. *Munoz*, 991 S.W.2d at 822. A neutral reason for the delay—"such as negligence or overcrowded courts"—weighs less heavily against the State. *Id.* A valid reason for delay does not weigh against the State. *Id.* We may not presume that unexplained delay was either deliberate or valid. *See Dragoo*, 96 S.W.3d at 314. Delay caused by the defendant or her counsel weighs against the defendant. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).

The State's reasons for the delay are the substitutions of White's counsel and the COVID-19 pandemic. White contends on appeal that the State presented no evidence of delay to the trial court. We disagree. Although the State did tell the court that it did not have any additional evidence outside of the court's file, the trial court took judicial notice of the court's file.

8

Regarding delays caused by White's conflicts with her trial counsel, the court's file contains evidence supporting reasonable inferences that the majority of the delay was the result of conflicts with White's counsel that were created by her insistence on filing pro se motions after being informed it was hindering her representation, by the necessity for White to be appointed substitute counsel as a result of her own actions, and by new counsel needing to prepare for trial by reviewing discovery and engaging in plea negotiations. *See Kelly v. State*, 163 S.W.3d 722, 727 (Tex. Crim. App. 2005) (concluding that even absent evidence of plea negotiations occurring, it was reasonable for trial court to infer that delay was attributable to such negotiations). The record shows that three continuances were requested by White's counsel— one after the cases were severed, one so that counsel could finish "reviewing extensive discovery," and one for counsel to travel abroad for a family legal matter. The record also demonstrates that the State filed pretrial witness lists and issued subpoenas three times in preparation for trial throughout the delay.

The remaining attributable delay was caused by the COVID-19 pandemic. "To the extent that the pandemic and related court closures weigh against the State, they do so but slightly." *Laird*, 691 S.W.3d 40. To the extent, as White contends, that there are periods of unexplained delay, these weigh only slightly against the State. *See Bosworth v. State*, 422 S.W.3d 759, 764 (Tex. App.—Texarkana 2013, pet. ref'd) ("When no reason is offered, we may presume that the reason lies somewhere between a deliberate delay and a valid reason that would justify the delay.").

Reviewing the evidence in the light most favorable to the trial court's ruling, *see Cantu*, 253 S.W.3d at 282, we conclude that this factor weighs heavily against finding a speedy-trial violation or at most only slightly against the State, *see Laird*, 691 S.W.3d at 40

(concluding that reason for delay factor weighed heavily against speedy trial violation "because the delay . . . was either attributable to [defendant]—his incompetency, constant changes in counsel, and motions for continuance—or weighed at most only slightly against the State").

*Assertion of the Right*

While the defendant has the responsibility to assert her right to a speedy trial, there is not a set requirement for when she must do so. *Cantu*, 253 S.W.3d at 282. Rather, "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. "Therefore, the defendant's assertion of [her] speedy-trial right (or [her] failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Cantu*, 253 S.W.3d at 283. Thus, "repeated requests for a speedy trial weigh heavily in favor of the defendant." *Id.* "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, [s]he should provide cogent reasons for this failure." *Id.* When a defendant files a motion to dismiss instead of a motion for speedy trial, it weakens the speedy trial claim "because it shows a desire to have no trial instead of a speedy one." *State v. Davis*, 549 S.W.3d 688, 704 (Tex. App.—Austin 2017, no pet.).

Here, White first asserted her speedy trial right on March 10, 2021, when she filed, through her attorney, her motion to dismiss for violation of her speedy trial right. *See Laird*, 691 S.W.3d at 42 (holding that when trial court does not rule on pro se motions filed while represented by counsel, they are not assertions of speedy trial right for purposes of balancing test). White contends that her pro se motions show that she wanted a speedy trial and that her trial counsel's failure to file a speedy-trial motion on her behalf explains why she did not assert her right sooner. However, the timing of White's pro se motions for speedy trial, her

10

conflicts with counsel, and her ambivalence to keep or discharge counsel, along with the subsequent need for substituted counsel to adequately prepare for trial create a reasonable inference that the trial court could have drawn that White's pro se requests for speedy trial were not a credible showing of a sincere desire for a trial. Further, White filed a pro se motion requesting dismissal of her first trial counsel because, as she alleged, her trial had been set without her consent.

Reviewing the evidence in the light most favorable to the trial court's ruling, we conclude that this factor weighs heavily against finding a speedy-trial violation because White did not assert her speedy trial right until she filed a motion to dismiss, rather than a motion for speedy trial, nearly four years and four months after her arrest. *See id.* (concluding that third factor weighed heavily against speedy-trial violation when "the record strongly indicate[d] that [defendant] was not truly interested in a speedy trial[, and] that he waited almost the full length of the delay to assert his right").

*Prejudice*

We analyze prejudice to the defendant in light of the following interests: (1) to prevent oppressive pre-trial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. *Barker*, 407 U.S. at 532. The third interest is the most serious, "because the inability of a defendant to adequately prepare [her] case skews the fairness of the entire system." *Id.* (identifying death and memory loss of witnesses as examples of potential prejudice against defendant that may be caused by delay).

11

It is uncontroverted that White was in custody during the entirety of the delay. This subfactor weighs in her favor. *See Munoz*, 991 S.W.2d at 828 (concluding that defendant's incarceration for entire seventeen-month delay was "dispositive" for oppressive pretrial incarceration subfactor). However, the other two sub factors do not. White contends that she was prejudiced by the lack of adequate medical care and the loss of family relationships. The only evidence that White was not receiving the proper medication for her MS, came from the testimony of her witnesses, which were all based on information they received from White. The trial court could have reasonably disregarded that testimony based on credibility determinations. *See Cantu*, 253 S.W.3d at 282. White also presented evidence through her sister's testimony that her lengthy incarceration caused her mother to no longer support her and that her mother was not going to attend trial or be willing to testify. The trial court could have reasonably considered this evidence not relevant as there was no evidence presented regarding what the mother's testimony would have been. Thus, we conclude that this factor weighs slightly in White's favor.

*Appellant's Additional Circumstances*

In conducting the balancing test, we must consider all four factors together "along with any other relevant circumstances." *Id.* at 281. White contends that we should consider two additional circumstances—her daughter's safety and "the State's lack of accountability and unwillingness to accept responsibility." Regarding her daughter's safety, she requests that we consider that there are ways for her ex-husband to keep her daughter safe other than her remaining incarcerated. We will consider this factor as neutral. Regarding her other additional circumstance, White complains that at the speedy trial hearing the State did not concede that the length of delay triggered the speedy trial analysis, and thus, White contends that the State should

be discouraged from this behavior in the future by this Court considering it as an additional factor. The State frames this contention as White asking that we consider a speedy-trial claim to be a vehicle to punish a prosecutor for arguments made to the trial court regarding the balancing test. We consider this factor as neutral.

*Balancing the Factors*

In applying the *Barker v. Wingo* balancing test, we must "use common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.* Although we conclude that the prejudice factor weighed slightly in White's favor, any prejudice was significantly mitigated by White's role in causing much of the delay. *See Balderas v. State*, 517 S.W.3d 756, 773 (Tex. Crim. App. 2016) (concluding that "[a]ny prejudice to [defendant] was extenuated by his role in requesting the delay"). Further, although the length of delay weighs heavily in her favor, her own actions in causing the delay and the evidence supporting a finding that she was not actually seeking a speedy trial but rather dismissal, weigh heavily against her. Upon considering the record before the trial court, applying the relevant standard of review, and utilizing a common-sense approach in balancing the *Barker v. Wingo* factors, we conclude that the trial court did not err in denying White's motion to dismiss. We overrule her sole issue.

13

**CONCLUSION**

Having overruled White's sole issue on appeal, we affirm the trial court's judgment of conviction.

_____
Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:  October 18, 2024

Do Not Publish