**REVERSE AND DISMISS; Opinion Filed November 29, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00991-CR**

**DUC MINH HUYNH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 6**
**Collin County, Texas**
**Trial Court Cause No. 006-85260-2019**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Goldstein
Opinion by Justice Schenck

Appellant Duc Minh Huynh appeals his conviction for the Class A

misdemeanor offense of driving while intoxicated (DWI) with a prior conviction.

TEX. PENAL CODE ANN. §§ 49.04, 49.09(a). In a single issue, appellant asserts he

was denied his right to a speedy trial. Agreeing that appellant has been deprived of

his Constitutional right to a speedy trial, we reverse the trial court's judgment and

dismiss the indictment with prejudice. Because the issues presented are settled in

law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

Appellant was arrested on December 9, 2018 for DWI and a sample of his blood was drawn with his consent.[1]  Appellant was thereafter released on his own recognizance.  On April 22, 2019, a DPS analyst finished testing appellant's blood sample.  The alcohol analysis revealed appellant's blood-alcohol level exceeded legal limits.

On June 13, 2019, the district attorney's office filed an information formally charging appellant with the December 9, 2018 DWI offense.  A probable cause affidavit was presented on that date as well.  On June 14, 2019, the trial court found the affidavit submitted presented insufficient probable cause and denied the State's request for the issuance of an arrest warrant.  On August 28, 2019, the State presented a new probable cause affidavit to the court.  The following day, the magistrate judge signed the probable cause affidavit, and a warrant for appellant's arrest issued.  That warrant was executed on or about September 24, 2019.

On October 25, 2019, appellant made his first appearance before the court.  At that appearance, conditions for bail were imposed requiring, in part, that appellant install an ignition-interlock device on his vehicle, pay a $40 administrative fee per

---

[1] Police Officer Hoover found appellant unresponsive behind the wheel of his running vehicle stopped in the lane of travel at the intersection of Stacy Road and Highway 5.  Officer Hoover summoned medical personnel who took appellant to the hospital, where Officer Hoover read him the DIC-24 statutory warnings.

month for supervision services pertaining to the interlock device, and submit to and pay for random urinalysis testing.

On December 20, 2019, appellant filed a motion to dismiss the indictment for violating his right to a speedy trial asserting the delay in charging and arresting him allegedly impacted his ability to obtain and present exculpatory evidence. On December 23, 2019, appellant's counsel filed a written request for a speedy trial.

The trial court conducted a hearing on what the court referred to as appellant's "speedy trial motion" on February 7, 2020. At the hearing, the trial court took judicial notice of the contents of the court's file including the fact that the offense was alleged to have occurred on December 9, 2018; the case was filed on June 13, 2019, six months and four days after the offense was alleged to have occurred; appellant was served with an arrest warrant on September 24, 2019, after the court signed a probable cause affidavit on August 29, 2019; and the first appearance was on October 25, 2019.

At the hearing, appellant presented the testimony of three coworkers who had been with appellant at various times on the night of the alleged offense. The witnesses indicated that due to the passage of time they could no longer recall how much appellant had to drink that night or whether appellant appeared to be intoxicated. The court also received testimony that video footage from cameras at two of the witnesses' homes, which would have shown appellant arriving and leaving that night, had now been lost due to automatic delete functions. The State

–3–

did not present any evidence. At the conclusion of the hearing, the trial court denied appellant's "speedy trial motion," noting, in part, that "much of [the] delay was because of the court's docketing." On that same day, the trial court set the case for a jury trial on May 11, 2020.

Thereafter, the trial court reset the trial date four times. Specifically, on May 11, 2020, the case was reset to September 21, 2020; on September 16, 2020, the case was reset to March 29, 2021; and on March 26, 2021, the case was reset to August 16, 2021. None of these trial resets were at the request of appellant. On September 13, 2021, the case was set to be heard on October 29, 2021, on an open plea. At this point, appellant had been subject to the ignition interlock and administrative fee requirements for more than two years; exceeding the maximum period such conditions could be imposed on community supervision for the charged offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.053(f).

On October 29, 2021, appellant appeared at his open plea hearing, where he re-urged his speedy trial motion, incorporating the evidence from the earlier hearing. Following the denial of his motion, appellant entered an open plea of guilty.[2] The court rendered judgment against appellant, assessed punishment at 180 days' confinement in the Collin County Jail with a $500 fine, probated for 12 months, and placed appellant on community supervision for the probated period. Among the

---

[2] At the plea hearing a reference was made as to an earlier outbreak of COVID in the courtroom as one of the reasons for a delay in bringing appellant's case to trial, but no details regarding same were offered into the record. Nor was there any indication which or how many resets that outbreak resulted in.

–4–

terms imposed on appellant as conditions of his community supervision were submission of random urine samples for testing, completion of a repeat offender DWI education course, and no operation of a motor vehicle unless the vehicle is equipped with a properly functioning, un-bypassed ignition-interlock device. This appeal followed.

## DISCUSSION

Appellant asserts the trial court erred in denying his speedy trial motion when he initially urged same and when he re-urged same prior to entering his open plea of guilty.

## I.    Standard of Review

We apply a bifurcated standard of review in a speedy trial analysis: we assess factual determinations against an abuse of discretion and conduct a *de novo* review of legal determinations. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). Under this standard, we defer to the trial court's resolution of disputed facts and to its right to draw reasonable inferences based on those facts.[3] *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014). But the balancing test of the *Barker* factors, discussed below, is a purely legal question that we review *de*

---

[3] Here, the trial court did not make findings of fact. Because the State prevailed in the trial court on appellant's speedy trial claim, we must presume the trial court resolved any disputed fact issues in the State's favor, and we are required to defer to these implied findings of fact that the record supports. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

*novo.  Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

## II.    Applicable Law – the *Barker* Factors

The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees the accused in a criminal proceeding the right to a speedy trial.  *See* U.S. CONST. amend VI; *see Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967) (identifying right to speedy trial as fundamental and holding that it is applicable to states through Due Process Clause of Fourteenth Amendment); *see also Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014).  The right to a speedy trial protects a defendant against unjustified and prejudicial pretrial delay.  *Doggett v. United States*, 505 U.S. 647, 651–52 (1992).  The right attaches once a person is either arrested or charged.  *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

To determine whether the right to a speedy trial has been denied to an accused, a reviewing court balances factors described in *Barker v. Wingo*.  *See Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).  These *Barker* factors include the: (1) length of delay, (2) reasons for the delay, (3) defendant's assertion of his speedy trial right,[4] and (4) prejudice, if any, suffered by the defendant due to the

---

[4] The defendant has no duty to bring himself to trial, but he does have a duty to assert his right to a speedy trial.  *Cantu*, 253 S.W.3d at 282.

delay. *Barker*, 407 U.S. at 530. All four of these factors are related, and no factor alone is dispositive.

### A. *Presumptively Prejudicial Delay*

To trigger a speedy trial analysis, the defendant must make an initial showing that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett*, 505 U.S. at 652 n.1; *Gonzales*, 435 S.W.3d at 808. The court of criminal appeals has reiterated that "presumptive prejudice" simply marks the point at which courts deem the delay unreasonable enough to trigger further inquiry. *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999) (quoting *Doggett*, 505 U.S. at 652 n.1). There is no set or defined period of time that has been held to be a *per se* violation of a defendant's right to a speedy trial under the Sixth Amendment. *Barker*, 407 U.S. at 530; *Cantu*, 253 S.W.3d at 281. Rather, alleged violations are considered on a case-by-case basis, and each case is considered on its own merits. *Barker*, 407 U.S. at 529–30; *Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996). The length of delay that will necessitate further inquiry is dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S at 530–31; *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002). The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, more complex charge. *Barker*, 407 U.S. at 530–31; *Zamorano*, 84 S.W.3d at 649.

Courts have found delays approaching one year to be unreasonable enough to trigger the *Barker* inquiry. *See Balderas*, 517 S.W.3d at 768; *see also State v. Page*, No. 05-18-01391-CR, 2020 WL 1899453, at *4 (Tex. App.—Dallas Apr. 17, 2020, no pet.) (mem. op., not designated for publication) (citing *Balderas*, 517 S.W.3d at 768; *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *State v. Thomas*, 453 S.W.3d 1, 4 (Tex. App.—Dallas 2014, no pet)).

Although appellant was not taken into custody on the night of the alleged offense, he was effectively arrested for DWI at that time because the officer read him the DIC-24 statutory warnings. *See Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.) (holding defendant was under arrest when officer read DIC-24 statutory warnings); *Bell v. State*, 881 S.W.2d 794, 799—800 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (same); *see also Williams v. State*, No. 05-03-00787-CR, 2004 WL 434622, at *3 (Tex. App.—Dallas Mar. 10, 2004, pet. ref'd) (not designated for publication) (same). Thus, his right to a speedy trial began running from December 9, 2018.

It is undisputed that the delay between appellant's arrest and the first hearing on his speedy trial motion was approximately one year and two months. And the delay between appellant's arrest and his plea hearing was more than two years and ten months. We conclude that these delays were more than adequate to find presumptive prejudice and trigger a full *Barker* analysis. *See Balderas*, 517 S.W.3d at 768 (noting that, in general, courts deem delay approaching one year to be

unreasonable enough to trigger *Barker* inquiry); *Zamorano*, 84 S.W.3d at 649 (delay of two years and ten months was sufficiently lengthy to trigger analysis of other *Barker* factors in plain-vanilla DWI case).

When the full *Barker* analysis is triggered, the State has the burden to justify the delay. *Cantu*, 253 S.W.3d at 280. The defendant, in turn, has the burden to prove his diligent assertion of his right to a speedy trial and to show prejudice. *Id.* The defendant's burden on the latter two factors varies inversely with the State's culpability for the delay; the greater the bad faith or official negligence on the part of the State, the less a defendant must show assertion of the right or prejudice. *Id.* at 280–81.

### B. Reasons for the Delay

This *Barker* factor looks to the reasons the State assigns to justify the delay in bringing the defendant to trial. *See Barker,* 407 U.S. at 531. When engaging in an analysis of this second *Barker* factor, a sliding scale applies with different weights assigned to different reasons for the delay. *See Zamorano*, 84 S.W.3d at 649. There are three categories of reasons on this sliding scale: a deliberate reason, a neutral reason, and a valid reason. *Black v. State*, No. 02-21-00057-CR, 2022 WL 3464563, at *5 (Tex. App.—Fort Worth Aug. 18, 2022, no pet.) (mem. op., not designated for publication).

As to the first category, deliberate conduct by the State intended to hamper the defense will weigh heavily against the State. *See Balderas*, 517 S.W.3d at 768.

–9–

For the second category, delays resulting from a non-deliberate or otherwise neutral reason, such as negligence or overcrowded court dockets, still weigh against the State—since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant—but not heavily. *Barker*, 407 U.S. at 531. As to the final category, if the delay resulted from a valid reason, such as a missing witness or engaging in plea negotiations, the delay is not weighed against the State. *Munoz*, 991 S.W.2d at 822. If the State fails to give a reason for the delay, it will be considered to be a neutral reason, weighing against the State, but not heavily, because when the record is silent as to the reason for the delay, we can presume neither deliberate conduct by the State nor a valid reason for the delay. *Balderas*, 517 S.W.3d at 768.

The delays in this case can be divided into four segments: (1) the delay in filing a formal complaint against appellant, (2) the delay in issuing and executing an arrest warrant, (3) the delay in initially setting the case for trial, and (4) the delay between the first trial setting and appellant's open plea.

The State offered no explanation for the delay from appellant's arrest on December 9, 2018, until he was charged on June 13, 2019. More particularly, the State offered no evidence or explanation for why it took four months and twelve days to complete the alcohol analysis or why it took almost two additional months to file the information. Because the State offered no explanation for these delays and because these delays involved the managing of the State's resources, they weigh

–10–

slightly against the State. *Munoz*, 991 S.W.2d at 822; *see also Black*, 2022 WL 3464563 at *7 (175 day delay in obtaining blood test results, caused by short-staffing and backlog, weighed only slightly against the State).[5]

The State also provided no explanation for the second delay, the period between the filing of the charging instrument on June 13, 2019, to the execution of the arrest warrant on September 24, 2019. And in fact, the record indicates that part of this delay was due to the State presenting an insufficient probable cause affidavit, which delayed issuance of the arrest warrant by at least two months. This delay appears to be due to the negligence of the State rather than a deliberate act and, thus, weighs slightly against the State. *See Barker*, 407 U.S. at 531.

It appears from the trial court's comments at the initial hearing on the speedy trial motion that the third delay, the period from the execution of the arrest warrant to the first trial setting of May 11, 2020, was attributable to the court's docket. A crowded court docket is not a valid excuse and weighs against the State, but not heavily. *Shaw*, 117 S.W.3d at 890.

As to the final delay, the period from the first trial setting to the open plea hearing on October 29, 2021, the State blamed the delay on restrictions in court proceedings during the COVID-19 pandemic. But even in a pandemic, the Constitution cannot be put away and forgotten. *Roman Catholic Diocese of*

---

[5] Unlike here, in the *Black* case, the State put on evidence at the speedy trial hearing to explain the delays that occurred in bringing the defendant in that case to trial. *See Black*, 2022 WL 3464563, at *5–7.

*Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020). As Justice Gorsuch noted in his concurrence in the *Roman Catholic Diocese* case, even if the Constitution has taken a holiday during the pandemic, it cannot become a sabbatical. *Id.* at 70 (Gorsuch, J., concurring). Thus, a state of disaster alone cannot indefinitely pretermit the speedy trial right, and given the facts in this case, the State is not excused for the entire delay from the initial trial setting to the plea hearing. *See Ex parte Sheffield*, 611 S.W.3d 630, 635 (Tex. App.—Amarillo 2020, pet. granted).

As an initial matter, we note, any delay following the onset of the pandemic became an issue due to the time it took the State to charge and obtain and execute an arrest warrant. Had the State promptly filed the case and provided a sufficient probable cause affidavit in the first instance, the case likely could have been tried before a jury prior to the onset of the pandemic.

We recognize this Court stated in *Conaster v. State* that "[d]elay caused by the **onset** of a pandemic cannot be attributed as fault to the State."[6] 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.) (emphasis added). But delay following the onset of a pandemic, after a reasonable time to put safeguards in place, should be attributable to the State, which we conclude is consistent with the notion that even in a pandemic, the Constitution cannot be put away and forgotten. *Roman Catholic Diocese*, 141 S. Ct. at 68.

---

[6] Unlike the defendant in *State v. Conatser*, appellant, as more fully discussed *infra*, requested a speedy trial and did so prior to the onset of the pandemic.

–12–

And, in fact, the Texas Supreme Court, in issuing its emergency orders regarding the COVID-19 state of disaster, recognized that its restrictions on court proceedings were subject to constitutional limitations. Moreover, notwithstanding the pandemic, the State's ability to hold a trial, while perhaps limited at various times and in various ways, was present during a substantial portion of the periods of delay in this case post the onset of the pandemic. *See, e.g.*, *Thirty-Sixth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 897 (Tex. 2021); *Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 863 (Tex. 2020); *Seventeenth Emergency Order Regarding the COVID-19 State of Disaster*, 609 S.W.3d 119 (Tex. 2020).

The supreme court issued an order on May 26, 2020, authorizing the resumption of in-person proceedings on June 1, 2020, subject to the adoption of an operating plan in compliance with the Office of Court Administration's (OCA) guidelines for social distancing, maximum group size, and other restrictions and precautions. *See Seventeenth Emergency Order Regarding the COVID-19 State of Disaster*, 609 S.W.3d 119 (Tex. 2020). Collin County had an approved plan in effect by July 1, 2020, and, prior to July 1, the Collin County, Courts at Law had adopted a Joint Statement Regarding Health and Safety Concerns regarding the outbreak of Covid-19 permitting "essential court matters" to proceed with jury trials, including where a defendant has requested a speedy trial or speedy disposition. Thus, appellant's case, already stale and subject to a pending speedy trial demand,

qualified as an essential court matter and should have proceeded to trial before non-essential court matters. Moreover, unreasonable delay in run-of-the-mill criminal cases, such as this one, cannot be justified by simply asserting that the public resources provided by the State's criminal justice system are limited and that each case must await its turn. *Barker*, 407 U.S. at 538.

The State presented no evidence at the hearings on appellant's speedy trial motion and did not justify most of the delay in this case. Thus, this factor weighs slightly against the State and in favor of finding a violation of appellant's right to a speedy trial. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

### C. The Timing of Appellant's Assertion of His Right to a Speedy Trial

Whether and how a defendant asserts his speedy trial right is closely related to the other *Barker* factors. *Barker*, 407 U.S. at 531 (noting that a defendant's timely assertion of his speedy trial right affects the other *Barker* factors). As a result, this factor "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right [to a speedy trial]." *Id.* at 531–32. In addition, although an accused is entitled to a speedy trial, a defendant has no duty to bring himself to trial. *See Zamorano,* 84 S.W.3d at 651. The point at which a defendant asserts his right is also important because it may reflect the seriousness of the personal prejudice he is experiencing. *Cantu*, 253 S.W.3d at 284. When evaluating a defendant's assertion of the right, the critical question is whether the defendant asserted his right in a manner that indicates a genuine desire for a speedy

trial, rather than a desire for dismissal on speedy trial grounds. *Barker*, 407 U.S. at 535–36. A motion that requests a dismissal rather than a speedy trial weakens a speedy trial claim because it shows a desire to have no trial instead of a speedy one. *Balderas*, 517 S.W.3d at 771.

Appellant requested a speedy trial on December 23, 2019, which was less than three months after he was served with the warrant for his arrest and more than a year after the alleged offense occurred. There is no evidence appellant knew of the charge against him before the arrest warrant was executed on or about September 24, 2019. The request was addressed to the court coordinator, who is generally responsible for assisting the court in managing the court's docket, and presented through the electronic filing system, with transmission to the parties and their counsel. In his motion to dismiss for speedy trial violation, appellant asserted, "The delay in filing this case has been so long, Defendant did not so much as have an opportunity to assert a speedy trial demand prior to nearly double the presumptive trigger for speedy trial analysis." A hearing was held on appellant's motion on February 7, 2020. Despite appellant's request for a speedy trial, at that time, the case had still not been set for trial.

The State points out appellant sought to dismiss the case. Given a substantial delay in arresting a defendant, a request for dismissal does not weigh as heavily against a speedy-trial claim, as the delay and any corresponding prejudice already has occurred. *State v. Davis*, 549 S.W.3d 688, 704 (Tex. App.—Austin 2017, pet.

ref'd) (citing *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. [Panel Op.] 1983), for proposition that seeking dismissal does not weigh against speedy-trial claim when long delay has caused sufficient prejudice)).

Because appellant was released on his own recognizance and more than nine months passed before the arrest warrant issued, and because he requested both a speedy-trial and dismissal because of the delay, we conclude his request for dismissal does not heavily undercut his speedy-trial claim. This factor weighs in favor of appellant.

### D. Prejudice to Appellant Because of the Length of Delay

The final *Barker* factor examines whether and to what extent the defendant was prejudiced by the delay. *Barker*, 407 U.S. at 532–33. The prejudice factor is assessed in light of the interests the right to a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532; *see Zamorano*, 84 S.W.3d at 652. The last interest is the most important because the fairness of the entire criminal-justice system is distorted when a defendant is unable to adequately prepare his defense. *Barker*, 407 U.S. at 532; *Gonzales*, 435 S.W.3d at 812. Particularized prejudice is not essential to every speedy trial claim because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify." *Hopper*, 520 S.W.3d at 923–24. If, however, an

accused can show prejudice, the burden shifts to the State to prove that the accused suffered no serious prejudice beyond that which ensued from ordinary and inevitable delay. *Munoz*, 991 S.W.2d at 826. If defense witnesses are unable to recall accurately events of the distant past, the accused is prejudiced. *Barker*, 407 U.S. at 532.

It appears from the record that appellant was confined to jail for three days before posting bond. He remained on bond pending trial. Accordingly, we conclude appellant was not subjected to oppressive pretrial incarceration. And, because appellant apparently did not know about the indictment until the arrest warrant was executed, he could have suffered little anxiety or concern prior to being served with the arrest warrant. However, this is not the end of the inquiry.

In the trial court, appellant asserted that the delay impaired his defense by depriving him of evidence he might have used in defending himself at trial. In support of this contention, appellant presented evidence that individuals who were with him on the night of the alleged offense, who were potentially witnesses in his defense, could not recall how much appellant drank that night or his demeanor and behavior. They indicated they would have had a better recollection of same had the case been promptly filed. In addition, appellant presented evidence that the video footage capturing his arrival and departure to and from two of the individuals' homes had been lost over the course of time. While one might debate whether, and to what extent, appellant's witnesses might have been able to provide meaningful

–17–

exculpatory testimony had the State charged appellant and obtained an arrest warrant earlier—giving appellant the opportunity to notify his eyewitnesses of the charge, discover what they recalled about the evening in question, and secure the video footage—in light of appellant's blood-alcohol level, appellant presented some evidence that the passage of time impacted his ability to at least explore this one source of possible exculpatory evidence.

Due to the length of delay between the date of the alleged offense and the plea hearing, more than two years and ten months, appellant asserts he suffered presumptively prejudicial harm. Prejudice is presumed when the delay is excessive because excessive delay may compromise the reliability of trial in ways that cannot be identified or proved. *See, e.g.*, *Shaw*, 117 S.W.3d at 889–90 (stating that "we must presume that the lengthy delay here did adversely affect appellant's ability to defend himself" in case involving delay of just over three years); *Zamorano*, 84 S.W.3d at 654 (stating that "the length of delay itself"—just under three years between arrest and hearing on speedy-trial motion and almost four years between arrest and plea hearing—"supports an inference of actual prejudice"). We therefore agree with appellant that prejudice must be presumed.

While the State may rebut a presumption of prejudice, in this case, it did not introduce any evidence in the trial court to establish appellant suffered no prejudice because of the delay. The State therefore has not rebutted the presumption of

prejudice, which weighs in favor of appellant's speedy-trial claim. *Gonzales*, 435 S.W.3d at 813, 815.

In addition, we note that the trial court took judicial notice of its file, which included the bond conditions that were imposed on appellant at the first appearance. Appellant contends that the delay in bringing him to trial caused him to suffer through bond conditions that were, as a result of the delay, actually more excessive than his sentence. At the time appellant entered his open plea, he had suffered through bond conditions, which included refraining from consumption of alcohol, random drug testing, and maintaining an ignition-interlock device on his vehicle, for two years, a duration greater than the sentence imposed against him. Indeed, the total amount of time he suffered through bond conditions was three years, which exceeded the maximum term of community supervision for the misdemeanor offense for which he had been convicted. *See* CODE CRIM. PROC. art. 42A.053(f).

We recognize this Court has held that the general anxiety and concern associated with a statutorily required ignition interlock system did not demonstrate prejudice for speedy trial purposes. *See State v. Page*, No. 05-18-01391-CR, 2020 WL 1899453, at *10 (Tex. App.—Dallas Apr. 17, 2020, no pet.) (mem. op., not designated for publication) (concluding "any anxiety, inconvenience, or embarrassment caused by that device is not beyond that which would normally be experienced by any defendant on bond for a second DWI offense."). In the *Page* case, the defendant had been subject to bond conditions, including the interlock

device, for nine and a half months at the time the trial court heard his speedy trial motion, and apparently Page did not raise a complaint regarding the length of time that he had been subject to such conditions. *See id.* Thus, while being subject to statutory conditions may not generally demonstrate prejudice, under the circumstances presented here, we conclude being subject to conditions that mirror those imposed for a probated sentence in excess of the maximum period applicable to the offense, is evidence appellant was prejudiced by the delay in bringing him to trial. *See Turner v. State*, 545 S.W.2d 133, 136 (Tex. Crim. App. 1976). Accordingly, we conclude the prejudice factor weighs in favor of appellant.

### E.  *Balancing the* **Barker** *Factors*

Of the four factors, we have found length and reasons for the delay weigh slightly against the State. As noted, appellant's speedy trial rights are measured from his apprehension in late 2018 and continued through his plea in late 2020. The State did not offer any reason for the length of delay, other than restrictions on court proceeding due to the COVID-19 outbreak and an apparent outbreak of COVID in the courtroom at some unspecified time. In addition, the fact that the State's initial probable cause affidavit was insufficient, which led to a delay that occurred prior to the onset of the pandemic, weighs in favor of finding a violation of appellant's rights. The third factor, assertion of the right, weighs slightly in appellant's favor as he did assert the right and then proceeded to request dismissal of the indictment. While appellant's arguments to the trial court were made in favor of dismissal and not a

speedy trial, it is apparent that at that point appellant believed the delay warranted a speedy trial analysis. The fourth factor, prejudice weighs in favor of appellant as he effectively served a great punishment than the maximum term for a probated sentence and because appellant introduced some evidence of harm to his defense. In addition, appellant raised the issue of presumptive prejudice and concerns over the loss of potential exculpatory evidence.

We conclude that, when balanced, the *Barker* factors weigh in favor of finding a speedy trial violation and that the trial court erred in denying appellant's request that the indictment be dismissed. Therefore, we sustain appellant's sole issue.

## CONCLUSION

Appellant was denied his right to a speedy trial, as guaranteed to him under the Constitution. We therefore reverse the trial court's judgment of conviction and render judgment dismissing the indictment with prejudice.

/David J. Schenck/
_____
DAVID J. SCHENCK
DO NOT PUBLISH     JUSTICE
TEX. R. APP. P. 47

210991F.U05

–21–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

DUC MINH HUYNH, Appellant

No. 05-21-00991-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 6, Collin County, Texas Trial Court Cause No. 006-85260-2019.
Opinion delivered by Justice Schenck. Justices Reichek and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the indictment is **DISMISSED** with prejudice.

Judgment entered this 29th day of November, 2022.